IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| R.A. JR. (a minor child, by and through his Father and next friend, Richard Lemmel Arnold, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.: CV-3:06-cv-337-WHA ) |
| DEPUTY SHERIFF WALTER LACEY, in his official and individual capacity, | ) ) ) |
| Defendant. | ) ) |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Walter Lacey, and submits this Brief in Support of the Motion for Summary Judgment filed herein, and states as follows:

**I.   INTRODUCTION**

This case arises out of an altercation between the Plaintiff, another individual and Sheriff's Deputies. Plaintiff, R.A., Jr., (hereinafter "Plaintiff") had been at the homecoming football game at Booker T. Washington High School in Tuskegee, Alabama on Friday, October 7, 2005. Defendant, Macon County Sheriff's Deputy Walter Lacey, along with Macon County Sheriff's Deputy Eric Whitlow, worked security for the football game.

At approximately 9:35 PM, officers were notified that a black male, later identified as Q. J., a minor, age 15, had a gun near the stadium entrance. The law enforcement officers went to investigate and discovered numerous individuals fighting. Deputy Lacey helped break up a fight where several people were kicking an individual on the ground. Deputy Lacey then observed the plaintiff involved in a scuffle with Deputy Whitlow and two other individuals. Deputy Lacey went

to Deputy Whitlow's aid and attempted to break up the fight. Deputy Lacey ordered the plaintiff to get on the ground and the plaintiff failed to comply. Deputy Lacey attempted to pull the plaintiff off of Deputy Whitlow but was unable to do so. Consequently, Deputy Lacey used his ASP baton to get the plaintiff to release his grip on Deputy Whitlow. Once the plaintiff let go of Deputy Whitlow, he ran off.

The Plaintiff alleges Fourth and Fourteenth Amendment violations for excessive force. The Plaintiff also alleges state law claims of assault, battery, false imprisonment, and malicious prosecution. The Plaintiff fails to establish a violation of his Fourth and/or Fourteenth Amendment rights; the Sheriff's Deputy is entitled to immunity; and the Plaintiff cannot maintain any state law claims. For the reasons that follow, summary judgment is due to be entered in favor of Sheriff's Deputy Walter Lacey.

## II.    NARRATIVE SUMMARY OF FACTS

At all material times hereto, the defendant (hereinafter "Deputy Lacey") was employed by the Macon County Sheriff. (Doc. 1 – Complaint ¶ 4). Deputy Lacey has been employed with the Macon County Sheriff's Department since 2004. (Lacey depo.p.12, l.9-19; p.25, l.2-4)). He attended the police academy from November, 2002 until February, 2003. (Lacey depo.p.14, l.19-22). Deputy Lacey was trained on the use of firearms, OC spray, and the ASP baton. (Lacey depo.p.16, l.19-p.17, l.5). For his training on use of the ASP baton, Deputy Lacey had a written and hands on curriculum. (Lacey depo.p.17, l.20-p.18, l.3). He was trained that each situation dictates itself as to use of the ASP baton. (Lacey depo.p.18, l.8-11).

On October 7, 2005, Deputy Lacey, along with Macon County Sheriff's Deputy Whitlow, provided security at a football game at Booker T. Washington High School. (Lacey depo.p.34, l.11-21). Deputy Lacey was assigned to the inside of the football game. (Lacey depo.p.35, l.10-

13). As Deputy Lacey and Deputy Whitlow were leaving the football game, a group of students ran up and told him that there were some people in the parking lot with a gun. (Lacey depo.p.35, l.18-p.36, l.1). As Deputies Lacey and Whitlow rushed to the parking lot, Deputy Whitlow called on the radio and advised they had an altercation going on and someone supposedly had a gun. (Lacey depo.p.35, l.2-14). Along with Deputies Lacey and Whitlow were Deputy Washington, Deputy Walker, and Officer Motley. (Lacey depo.p.39, l.11-15).

Deputy Lacey came upon a fight where there was a black male laying on the ground and eight to ten other black men standing around kicking him. (Lacey depo.p.40, l.9-17). Deputy Lacey broke that fight up by disbursing the males who were kicking the man on the ground. (Lacey depo.p.40, l.18-22). Either Deputy Walker or Deputy Washington picked the man up off the ground so he would not be kicked again. (Lacey depo.p.40, l.22-p.41, l.2). The law enforcement officers, in disbursing the men in the fight, pushed people away from the man on the ground. (Lacey depo.p.42, l.6-8). One individual kept coming back to kick the man after he had been pushed away by law enforcement officers. (Lacey depo.p.42, l.8-13). The officers took physical control of that individual, put him on the ground and told him to stay there. (Lacey depo.p.42, l.17-19). The officers could see that Deputy Whitlow was in the middle of another fight. (Lacey depo.p.42, l.19-20). After Deputy Lacey put the individual on the ground and told him to stay there, he left to go to the aid of Deputy Whitlow. (Lacey depo.p.43, l.8-10; p.47, l.3-8). By then, the officers had all split up. (Lacey depo.p.43, l.3). Deputy Lacey could see Deputy Whitlow holding two different male subjects out to the side with his arms. (Lacey depo.p.47, l.15-19). Deputy Whitlow was trying to keep the men apart. (Lacey depo.p.47, l.21). One individual, later identified as Q. J., was no longer resisting. (Lacey depo.p.47, l.22-23). The other individual was swinging and flailing. (Lacey depo.p.48, l.1-12).

As Deputy Lacey approached Deputy Whitlow to help him, another individual, later identified as the plaintiff, came up behind Whitlow and started swinging at Mr. Johnson; thus, Deputy Whitlow had three individuals involved in an altercation. (Lacey depo.p.48, l.14-20). Deputy Lacey knew that he could get hurt if he got involved but was more concerned about Deputy Whitlow's safety because the plaintiff had Deputy Whitlow from behind. (Lacey depo.p.61, l.19-p.62, l.1). Deputy Lacey tried to grab the plaintiff, the third person that was over Deputy Whitlow's shoulder. (Lacey depo.p.49, l.12-21). As Deputy Lacey had approached Deputy Whitlow, the plaintiff who was over Deputy Whitlow's shoulder caused Deputy Whitlow to lose control of the individual who had been flailing and the individual ran off. (Lacey depo.p.50, l.3-20). Deputy Lacey tried to pull the plaintiff off of Deputy Whitlow but he was holding on so tight and was still trying to get over the top of Deputy Whitlow. (Lacey depo.p.51, l.4-12). Deputy Lacey tried to pull the plaintiff away but he would not move. (Lacey depo.p.51, l.16-18). Deputy Lacey told the plaintiff to get on the ground, but he never turned loose. (Lacey depo.p.51, l.19-23). After Deputy Lacey could not get the plaintiff to let go of Deputy Whitlow, he struck him twice in his thigh area and once in his forearm. (Lacey depo.p.52, l.5-7). When Deputy Lacey hit his forearm, the plaintiff turned loose and Deputy Lacey dropped the baton. (Lacey depo.p.52, l.7-14). Deputy Lacey started to take the plaintiff to the ground but the plaintiff got loose and ran off. (Lacey depo.p.52, l.16-17). Deputy Lacey started to give chase but realized that Deputy Whitlow still had somebody with him, so he turned and went back to aid Deputy Whitlow. (Lacey depo.p.52, l.17-20). Deputy Whitlow patted Q.J. down and found a gun in his rear right pocket. (Lacey depo.p.52, l.21-23).

Later that night, Deputy Lacey wrote a report about the incident but did not include the plaintiff's name because the plaintiff's identity was unknown. (Lacey depo.p.69, l.17-19).

Deputy Lacey did not know the plaintiff's identity until his parents subsequently went to the Macon County Jail and identified their child. (Lacey depo.p.72, l.6-17). Within a week of the incident, Deputy Lacey took an Incident/Offense (I&O) Report to the juvenile court office regarding the incident with the plaintiff. (Lacey depo.p.76, l.8-10; p.77, l.5-7). Although Deputy Lacey took the I&O Report to the Macon County Juvenile Court office a week after the incident, no warrant was issued until December. (Lacey depo.p.78, l.16-p.79, l.6). Deputy Lacey did not bring charges against the plaintiff because his parents went to the Macon County Jail regarding the incident. (Lacey depo.p.81, l.12-13). Deputy Lacey would not file charges against an innocent person. (Lacey depo.p.73, l.1).

Macon County Sheriff David Warren requested an investigation into the incident by the Alabama Bureau of Investigation (ABI), which found "that Deputy Lacey did not use excessive force and performed his duties in accordance with the Sheriff's Department's policies and procedures." (See attached Final Summary of the ABI Investigation; See also, letter dated April 6, 2006 to Sheriff Warren from the Macon County, Alabama District Attorney regarding the results of the ABI investigation).

### III.   ARGUMENT

The plaintiff brings a four-count complaint against Deputy Lacey: I. §1983 Fourth and Fourteenth Amendment Excessive Force; II. Assault; and Battery; III. False Imprisonment; and IV. Malicious Prosecution.

**A.   FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIMS**

This Court has held that "[t]he first line of inquiry in analyzing a § 1983 excessive force claim is to identify the specific constitutional right allegedly infringed by the challenged

5

application of force. Calhoun v. Thomas, 2005 WL 646803 (M.D. Ala. 2005)(Thompson, J.)(referencing Graham v. Connor, 490 U.S. 386, 394 (1989).

> The Fourth Amendment prohibition against unreasonable seizures of the person, the Fourteenth Amendment due process clause, and the Eighth Amendment ban on cruel and unusual punishment all protect an individual's personal security; the plaintiff's status as a person undergoing seizure, a pretrial detainee, or a convicted person determines which constitutional protection is afforded.

Calhoun v. Thomas, 2005 WL 646803 (M.D. Ala. 2005)(Thompson, J.). In the case at bar, the plaintiff was not a convicted person so his claim of excessive force is examined under either the Fourth or Fourteenth Amendment. Judge Thompson noted that "the standards used to evaluate excessive force claims under the Fourth and Fourteenth Amendments differ." Id. "The Fourteenth Amendment Due Process Clause protects pretrial detainees from the use of excessive force that amounts to punishment." Id. Claims of excessive force during an arrest or seizure are viewed under a Fourth Amendment reasonableness standard. See Id. In the case at bar, it is undisputed that the plaintiff was not a pretrial detainee at the time he struggled with the Sheriff's Deputy.

Judge Thompson identified that period of time between a seizure or arrest and a person's status as a pretrial detainee a "legal twilight zone" for the purposes of determining which amendment applies to a claim of excessive force. Id. This Court reasoned that a Fourth Amendment analysis is "appropriate, if not required, in post-seizure, pre-detention allegations of excessive force." Id. Because the plaintiff's claims against Deputy Lacey arise out of actions alleged to have occurred during a struggle with officers prior to any arrest or seizure, his excessive force claims should be analyzed under the Fourth Amendment. Accordingly, any Fourteenth Amendment claim for excessive force is due to be dismissed.

6

In order to determine whether the plaintiff's Fourth Amendment constitutional right to be free from unreasonable seizure was violated, the Court must determine whether the Deputy's "actions were 'objectively reasonable' in light of the totality of the circumstances confronting them, without regard to their underlying intent or motivation." Id. Further, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). Importantly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Garrett v. Athens-Clark County, Georgia, 378 F.3d 1274, 1279 (11th Cir. 2004).

Further, the Eleventh Circuit has held that "the application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). Indeed, in analyzing Fourth Amendment excessive-force claims, this Court should "look at the totality of the circumstances, including the severity of the crime at issue, *whether the suspect poses an immediate threat to the safety of the officers or others*, and whether he is actively resisting arrest or attempting to evade arrest by flight." Garrett v. Athens-Clark County, Georgia, 378 F.3d at 1279(emphasis added). Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. at 396.

In Garrett v. Athens-Clark County, Georgia, 378 F.3d 1274 (11th Cir. 2004), the mother of an arrestee filed suit against police officers who subdued her son with chemical spray and fettered him during the course of his arrest, resulting in his death from positional asphyxia. The

7

district court, which referred to the method of restraint used by the officers as hog-tying, denied the officers' motion for summary judgment on claims of excessive force under the Fourth Amendment. The Eleventh Circuit reversed the denial of summary judgment holding that the officers did not violate the decedent's Fourth Amendment constitutional rights when they subdued him with chemical spray and fettered him by tying his wrists close to his ankles. The Eleventh Circuit noted that "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. The Court analyzed "whether the defendants used excessive force by determining whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." Id.

The plaintiff in Garrett argued to the Court that fettering constituted excessive force because the arrestee had been subdued through the use of chemical spray. The Eleventh Circuit rejected this argument holding "[i]n analyzing whether excessive force was used, courts must look at the totality of the circumstances: not just a small slice of the acts that happened at the tail of the story." Id. Thus, the Court held that fettering the arrestee was "within the range of reasonably proportionate responses to the need for force and was not excessive." Id. The Court went on to hold that the officers "took advantage of a window of opportunity-of unknown duration-to restrain [the arrestee] in such a way that he could not harm another officer or himself." Id.

In the case at bar, the plaintiff was involved in a struggle with a Sheriff's Deputy and an individual armed with a gun. Deputy Lacey, in an attempt to lend aid to a fellow officer and put an end to the physical altercation, used his ASP baton to subdue the plaintiff. It was not until Deputy Lacey used that amount of force that the plaintiff relented and released his grip on

Deputy Whitlow. Under the reasonableness standard of the Fourth Amendment analysis, the actions of Deputy Lacey were reasonable and indeed appropriate in the circumstances in order to restore order to a dangerous and escalating situation.

Deputy Lacey exerted that amount of force which was necessary to restore order; for the Plaintiff's protection and the protection of the Sheriff's Deputies. As such, the Plaintiff fails to identify any deprivation by Deputy Lacey of his Fourth Amendment rights to be free from excessive force.

### B. ELEVENTH AMENDMENT IMMUNITY

Deputy Lacey is entitled to Eleventh Amendment immunity on plaintiff's §1983 Fourth Amendment claims. Plaintiff asserts that his claims are brought against Deputy Lacey in his official and individual capacities (See Doc. 1 - Complaint ¶ 6). A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity. Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir.1997)(citing Pennhurst State School & Hospital v. Holgerman, 465 U.S. 89, 100 (1984), and Seminole Tribe v. Florida, 116 S.Ct. 1114, 1125 (1996)). Alabama has not waived its Eleventh Amendment immunity and Congress has not abrogated Alabama's immunity. Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir.1990). Therefore, Alabama state officials are immune from claims brought against them in their official capacities. Lancaster, 116 F.3d at 1429. It is well established in Alabama that sheriffs act as State Officials. See Turquitt v. Jefferson County, 137 F.3d 1285, 1289 (11th Cir. 1998). Under Alabama law, sheriffs and deputies sheriffs are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Carr, 916 F.2d at 1526. Further, "the Sheriff's 11th Amendment immunity

9

also extends to Deputy Sheriffs because of their traditional function under Alabama law as the Sheriff's alter ego." Carr, 916 F.2d at 1527.

Further, the United States Supreme Court has held that "a state is not a person within the meaning of § 1983." Will v. Michigan Depart. Of State Police, 491 U.S. 58 (1989). The Court held that "§ 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." Id. The court went on to note that "suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the officials office." Id. The Court, therefore, held that "neither a state nor its officials acting in their official capacities are persons under § 1983." Id. Because Deputy Lacey is a state official acting in his official capacity, he is not subject to liability pursuant to § 1983.

Because Deputy Lacey is a state official, to the extent that claims are brought against him in his official capacity, he is shielded from liability under the 11th Amendment of the United States Constitution.

### C. QUALIFIED IMMUNITY

Even if the court finds that plaintiff has established a Fourth Amendment claim, Deputy Lacey is entitled to qualified immunity on the claims brought against him in his individual capacity. Qualified immunity is designed to allow government officials sued under §1983 to avoid the expense and disruption of trial. Williams v. Gold Allison, 4 F.Supp.2d 1112, 1122 (M.D. Ala.1998)(citing Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir.1991)). Officials performing discretionary functions that do not violate clearly established law are entitled to qualified immunity. Williams, 4 F.Supp.2d at 1122 (citing Lancaster v. Monroe County, Alabama, 116 F.3d 1419, 1424 (11th Cir.1997). Determining the applicability of qualified

immunity requires a two-part analysis: (1) the defendant must first show he was performing an act within his discretionary authority, and (2) plaintiff must show that defendant violated clearly established law. Williams, 4 F.Supp.2d at 1122. The first step of the analysis is usually an uncontested issue which courts skip over. Williams, 4 F.Supp.2d at 1123 (citing Lassiter v. Alabama A&M University, 28 F.3d 1146, 1149 (11th Cir.1994) and others). An official need only show that (1) acts were undertaken pursuant to the official performance of his duties, and (2) that such acts were within the scope of the official's authority. Williams, 4 F.Supp.2d at 1122 quoting Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir.1994).

Discretionary authority means "all actions of the government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d at 1566(internal quotations omitted)(citing Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988). Noting the breadth of qualified immunity, the Eleventh Circuit stated that "protection of qualified immunity extends to all but the plainly incompetent or those who knowingly violate the law." Jordan, 38 F.3d at 1565 (internal quotations omitted)(citing Malley v. Briggs, 475 U.S. 335 (1986)).

In Garrett v. Athens-Clark County, Georgia, supra., although the Eleventh Circuit held that police officers did not violate an arrestee's Fourth Amendment right to be free from excessive force when they subdued him with chemical spray and fettered him, the Court went on to hold that

> out of an abundance of caution, we also conclude that qualified immunity would apply even if the defendants had violated [the arrestee's] right: no controlling case law had settled the applicable law; and given the circumstances, defendants' acts were not so far beyond the hazy border between excessive and acceptable force that every objectively reasonable officer, facing the circumstances, would have known that the acts violated the pre-existing federal law.

11

Garrett v. Athens-Clark County, Georgia, 378 F.3d at 1281.  Similarly, in the case at bar, Deputy Lacey's actions did not violate clearly established law.  Deputy Lacey witnessed the plaintiff struggling with an officer and an armed individual, necessitating the use force to gain control of the situation.  Thus, Deputy Lacey's actions of subduing the plaintiff with his ASP baton were objectively reasonable and did not violate any clearly established law.

The Eleventh Circuit held that in order for a plaintiff to prevail against officers in their individual capacities, he must "show that they were personally involved in acts or omissions that resulted in the constitutional deprivation."  Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  Plaintiff fails to establish that Deputy Lacey deprived him of a constitutional right.  Thus, there is insufficient evidence to establish that Deputy Lacey was personally involved in depriving the plaintiff of any clearly established constitutional right.

In this case, it is undisputed that all acts taken by Deputy Lacey were pursuant to performance of his duties and within the scope of his authority.  All acts are alleged to have taken place under color of state law.  (Doc. 1 - Complaint ¶ 5).  As such, the allegations are that Deputy Lacey, in the performance of his duties, engaged in improper conduct.  Such an allegation meets the first step of a qualified immunity analysis.

Once Deputy Lacey has established this element of qualified immunity analysis, then plaintiff must prove that he violated clearly established law.  Williams, 4 F.Supp.2d at 1122.  In order to determine whether the law was clearly established, "the relevant, dispositive inquiry…is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Calhoun v. Thomas, supra. at *9(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The United States Supreme Court established that a law is clearly established if it gives officials

reasonable warning that their conduct constituted a deprivation of a constitutional right.  See Hope v. Pelzer, 536 U.S. 730 (2002).

The defendant, at all material times hereto, acted within his discretion to insure and promote the safety and well-being of the plaintiff, fellow officers, and citizens.  It had been reported to Deputy Lacey that an individual was armed with a gun.  Deputy Lacey witnessed Deputy Whitlow struggle with several individuals, one of whom was the plaintiff.  Deputy Lacey feared for Deputy Whitlow's safety and attempted to extricate the plaintiff from the struggle. Deputy Lacey instructed the plaintiff to get on the ground, but the plaintiff failed to comply.  The plaintiff had a solid grip on Deputy Whitlow and would not let go, despite Deputy Lacey's attempts to pull him away.  It was not until Deputy Lacey used his ASP baton that the plaintiff released his grip on Deputy Whitlow.  Accordingly, Deputy Lacey acted within his discretion and is entitled to qualified immunity.

### D.     STATE LAW CLAIMS

The Plaintiff brings state law claims against Deputy Lacey for assault, battery, false imprisonment, and malicious prosecution.

#### a.     Immunity

Deputy Lacey is entitled to absolute immunity, discretionary function immunity, and state agent immunity from the state law claims asserted against him.

##### i.     Absolute Immunity

Deputy Lacey is entitled to immunity under Article I § 14 of the Alabama Constitution of 1901.  "When Article I, § 14 Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed."  Sholas Community College v. Colagross, 674 So.2d 1311 (Ala. Civ. App. 1995).  The Alabama

Constitution mandates that "the State and its agencies have absolute immunity from suit in any court." Id. (citing Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989)). State officers "in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." Colagross, 674 So.2d at 1313 to 1314 (citing Phillips v. Thomas, 555 So.2d at 83). The 11th Circuit has agreed with the Alabama Supreme Court that "a suit brought against a Sheriff or a Deputy Sheriff in his individual capacity alleging negligence in the performance of his statutory duties should be treated as a suit against the state." Lancaster v. Monroe County Ala., 116 F.3d 1419, 1431 (11th Cir. 1997). The 11th Circuit went on to hold that those claims against a Sheriff and Deputy Sheriff were "barred by Alabama's absolute sovereign immunity." Id. The 11th Circuit has explicitly held that "under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." McMillian v. Johnson, 101 F.3d 1363 (11th Circuit 1996). See also, Tinney v. Shores, 77 F.3d 378 (11th Cir. 1996)(holding that under Alabama law a sheriff and deputy sheriff are shielded by sovereign immunity against claims based upon intentional torts). Because the action against Deputy Lacey is an action against the state, summary judgment is due to be granted to him with respect to any state law claims pursuant to Article I, § 14 of the Alabama Constitution of 1901.

    ii.    <u>Discretionary Function Immunity and § 6-5-338 (1975) Immunity</u>

Further, Deputy Lacey is entitled to discretionary function immunity. Under Alabama statutory law "every peace officer, … whether appointed or employed as such peace officer by the state or county or municipality thereof… shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Alabama Code § 6-5-338 (a)(1975). The Eleventh Circuit recognized that

"[i]n Alabama, law enforcement officials,…enjoy statutory immunity from suit for performance of any discretionary function within the line and scope of his or her law enforcement duties." Wood v. Kesler, 323 F.3d 872, 883 (11th Cir. 2003)(citing Ala. Code § 6-5-338)(internal quotations omitted). The Court further explained that "[u]nder discretionary-function-immunity analysis, a court first determines whether the government defendant was performing a discretionary function when the alleged wrong occurred; if so, the burden shifts to the plaintiff to demonstrate that the defendant[] acted in bad faith, with malice or willfulness in order to deny [him] immunity." Wood v. Kesler, 323 F.3d at 883.

> Discretionary acts are those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.

Id. At 883-84.

In the case at bar, Deputy Lacey was engaged in discretionary acts in attempting to quell the aggressive struggle by the plaintiff. Deputy Lacey determined that the use of force was necessary to subdue the Plaintiff and exerted only that amount of force which was necessary to restore order. Further, Deputy Lacey used force against the Plaintiff in an effort to ensure his own safety and the safety of others. Accordingly, Deputy Lacey is entitled to discretionary function immunity for all state law claims.

    iii.    State Agent Immunity

Deputy Lacey is entitled to State Agent immunity pursuant to Ex parte Cranman, 792 So.2d 392 (Ala. 2000). Pursuant to Cranman,

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's (1) formulating plans, policies, or designs; or (2) exercising his or her judgment in the administration of a department or agency of government,

15

> including, but not limited to, examples such as: (a) making administrative adjudications; (b) allocating resources; (c) negotiating contracts; (d) hiring, firing, transferring, assigning, or supervising personnel; or (3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or (4) **exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons;** or (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Ex parte Cranman, 792 So.2d at 405 (emphasis added). Because Deputy Lacey was engaged in exercising his judgment relating to his duties as a law enforcement officer at all material times hereto, he is immune from civil liability in his individual capacity for the state law claims asserted against him. Accordingly, summary judgment is due to be granted.

          b.      State Law Claims

For the reasons set forth regarding Plaintiff's federal claims under the Fourth Amendment, and for the reasons that follow, Plaintiff's state law claims must also fail.

          i.      Assault and Battery

"To succeed on a claim alleging battery, a plaintiff must establish: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." Ex parte Atmore Community Hospital, 719 So.2d 1190, 1193 (Ala. 1998). Although a successful assault becomes a battery, they are separate torts. See Harper v. Winston County, 2004 WL 870456 (Ala. 2004). "Assault has been defined as an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate

the attempt, if not prevented." Wood v. Cowart Enterprises, Inc., 809 So.2d 835, 837 (Ala. Civ. App. 2001).

Deputy Lacey's actions were neither offensive nor unlawful. The force exerted upon the plaintiff was lawful and necessary to restore order and to ensure the protection of the Sheriff's Deputies and the plaintiff. As such, no cause of action for assault and battery can lie, and summary judgment is due to be granted.

ii.     False Imprisonment

The plaintiff brings a false imprisonment claim pursuant to Alabama Code § 6-5-170. This statute provides that "[f]alse imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." In order to establish a cause of action against Deputy Lacey for false imprisonment, the plaintiff must establish that he was *unlawfully* detained. See Borders v. City of Huntsville, 875 So.2d 1168 (Ala. 2003)(discussing need for probable cause in order to effectuate a lawful arrest); See also, Uphaus v. Charter Hospital of Mobile, 582 So.2d 1140, 1142 (Ala. Civ. App. 1991)(holding that "[f]alse imprisonment consists of the unlawful detention of a person for any length of time whereby one is deprived of one's personal liberty."). The plaintiff's false imprisonment claim must fail because the plaintiff was not detained by Deputy Lacey. The plaintiff's own failure to release Deputy Whitlow and break away from the fight with Q.J. was the reason he was involved in the struggle. Indeed, as soon as Deputy Lacey struck the plaintiff's arm, the plaintiff released his grip and ran away. At no time was he detained by Deputy Lacey.

iii.    Malicious Prosecution

The Eleventh Circuit has noted that:

> Under Alabama law, to prevail on a malicious prosecution claim, a plaintiff…must show: (1) a prior judicial proceeding was instituted

17

> by the defendant…; (2) the defendant acted without probable cause in the prior proceeding; (3) the defendant acted with malice in instituting the prior proceeding; (4) the prior proceeding ended in favor of the plaintiff; and (5) the plaintiff was damaged.

United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1290 (11th Cir. 2001).

The plaintiff cannot establish that Deputy Lacey instituted any action against him without probable cause or with malice. Deputy Lacey witnessed the plaintiff struggle with Deputy Whitlow and when he ordered the plaintiff to stop and get on the ground, the plaintiff failed to comply. There is no evidence, nor can there be, that Deputy Lacey instituted any criminal action against the plaintiff without probable cause or with malice; Deputy Lacey would not charge an innocent person. Accordingly, summary judgment is due to be granted.

## IV.    CONCLUSION

Deputy Lacey was at all material times hereto engaged in the exercise of his discretionary duties as a state official. Deputy Lacey first came into contact with the plaintiff when he was struggling with Deputy Whitlow and Q.J. The plaintiff was aggressive, swinging wildly and failed to release his grip on Deputy Whitlow, necessitating the use of force by Deputy Lacey in order to gain control of the situation.

Viewed in its totality, the situation faced by Deputy Lacey dictated the use of force to subdue the plaintiff. Deputy Lacey knew that numerous individuals were involved in fights, an unknown individual was armed with a gun, and a fellow sheriff's deputy was in the middle of a struggle with several unknown individuals. Deputy Lacey feared for Deputy Whitlow's safety and intervened to try and end the struggle. Deputy Lacey ordered the plaintiff to get on the ground; however, the plaintiff failed to comply. Deputy Lacey attempted to pull the plaintiff off Deputy Whitlow but was unable to do so. Only then, did Deputy Lacey use his ASP baton to get the plaintiff to release his grip on Deputy Whitlow. The use of the ASP baton successfully put

an end to the altercation. The actions of Deputy Lacey were reasonable and necessary in order to restore order and for the protection of the plaintiff and others. As such, the plaintiff fails to identify a deprivation of his Fourth and/or Fourteenth Amendment rights. Further, the plaintiff fails to establish any state law claims for which Deputy Lacey is liable and for which he is not immune. Accordingly, Deputy Lacey respectfully requests this Honorable Court enter Summary Judgment in his favor as to all claims brought against him.

/s/ C. Winston Sheehan, Jr.
C. WINSTON SHEEHAN, JR.
Attorney for the Defendant, Walter Lacey

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama 36102-2148
Phone: (334) 387-7680
Fax:    (334) 387-3222

## **CERTIFICATE OF SERVICE**

  I hereby certify that on January 5, 2007, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered persons and that those persons not registered with the CM/ECF system were served by U.S. mail:

Hon. Arlene M. Richardson  
Richardson Legal Center, LLC  
Post Office Box 971  
Hayneville, AL 36040-0971

            /s/ C. Winston Sheehan, Jr.  
            OF COUNSEL