## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

R.A. JR. (a minor child, by and through his      )
Father and next friend, Richard Lemmel           )
Arnold),                                          )
                                                 )
    Plaintiff,                )
                                                 )
v.                                                )    Case No.: CV-3:06-cv-337-WHA
                                                 )
DEPUTY SHERIFF WALTER LACEY,                      )
In his official and individual capacity,          )
                                                 )
    Defendant.                )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** the Plaintiff R.A. Jr., by and through his attorney of record and hereby submits his Response to Defendants Motion for Summary Judgment and in support thereof states as follows:

### I.    INTRODUCTION

This case arises out of the unreasonable and unnecessary use of force by Deputy Lacey against R.A. Jr. who, at the time of this incident, was twelve years of age. On October 7, 2005, R. A. attended a football game with his brother and sister at Booker T. Washington High School. Before the football game was over; R.A., his brother Ronald Ligon and a friend, Raymond Swanson, walked out of the stadium to meet R.A.'s mother who was picking them up.

On the way out of the stadium, the three were approached by Q. J. who threatened to "put a cap" in Ronald Ligon. Raymond Swanson ran to notify Deputy Whitlow, who was standing nearby, that Q.J. had a gun. Deputy Whitlow walked toward Q.J., who at this point was involved in a physical altercation with Ligon, and grabbed both of the boys. The incident was under control within a matter of minutes and Q.J. was arrested and taken to the police station.

R.A. Jr., his brother and Raymond Swanson were walking toward the designated location where Mrs. Arnold was to pick up the children. They were across the street from where the fight had taken place

1

when Deputy Lacey ran up on the boys, grabbed R.A. Jr., threw him on the ground and began striking R.A. Jr. with his expandable baton ("ASB").

R.A. Jr. was injured by the forceful use of the baton and sought medical treatment. He was diagnosed with a broken blood vessel in his thigh, pain and bruising in his hip shoulder thigh and back. (Exh. 3[1]). He was unable to walk without crutches for approximately two weeks and was not able to attend school for several weeks. (Exh. 4[2]).

R.A. Jr.'s mother and father reported their son's injury to the Macon County Sheriff the following Monday. After Mr. and Mrs. Arnold lodged their complaint, Deputy Lacey filed an Incident/Offense Report identifying R.A. Jr. as a "suspect." Several months after the incident, on December 2, 2002, Officer Lacey swore out a warrant of arrest for R.A. Jr. charging him with disorderly conduct. R.A. Jr. was later acquitted of those charges.

Deputy Lacey struck R.A. Jr. after the fight had been dispersed and an arrest of the offenders was underway. The force used against R.A. Jr. was excessive and resulted in serious injury. Deputy Lacey then invoked the malicious prosecution of R.A. Jr. without probable cause. R.A. Jr. was caused to stand trial for a crime he did not commit.

## II.    NARRATIVE SUMMARY OF FACTS

On October 7, 2005 Deputies Lacey, Whitlow, Washington, Walker, Howell and Officer Motley were working security at the Booker T. Washington High School football game. (Exhibit 1[3] pg. 19: 1-2). A male ran toward Deputy Whitlow and said that a person had a weapon. (Exh. 1 pg. 13: 6-12). Raymond Swanson, ran to get the police when Q.J. threatened to shoot R.A. Jr.'s brother. (Exh. 7 pg. 74). The person with the gun was coming toward Deputy Whitlow also. (Exh. 1 pg. 13:7-22). The person with the

---

[1] Exhibit 3—Emergency Room Record 10/10/2005
[2] Exhibit 4—Medical Records: Dr. Walker 10/13/05 and 10/20/05
[3] Exhibit 1: Deposition of Deputy Eric Whitlow

gun was wearing an orange T-Shirt and was later identified as Q.J. (Exh. 1 14: 14-3 and pg. 19: 12-14 and Exhibit 2[4]).

Q.J. had threatened R.A. Jr.' s brother and his friend Raymond Swanson had run for the police. (Exh. 7[5] pg. 74 and Exh. 9[6] pg. 62 and 63: 1-3 and pg. 85). Before officer Whitlow could get there, Q.J. began fighting with R.A.'Jr.'s brother Ronald, and R.A. tried to pull Ronald away from the fight by his shirt. (Exh. 7 pg. 75: 12-19). When Whitlow arrived he grabbed Q.J. and Ronald and held them at arms length. (Exh. 7 pg. pg. 76: 13-14). Q.J. was trying to hit Ronald and was swinging over Deputy Whitlow. (Exh. 7 pg. 79). The Deputy released Ronald Ligon and told Raymond Swanson to get him away. (Exh. 9: pg. 72: 9-20 and Exh. 7 pg. 87: 4-10).

R.A. Jr., his brother and friend began walking toward the place where Mrs. Arnold was to pick them up. (Exh. 7 pg. 97: 13-21). When they had crossed the street Deputy Lacey ran up behind them swinging his expandable baton. (Exh. 7 pg. 98: 1-6 and 100: 5-16 and Exh. 9 pg. 77: 1-18 ). He grabbed R.A. Jr. and beat him with the baton several times on the thigh and on his arm and torso. (Exh. 9 pg. 84: 3-15 and Exh. 7 pg. 1-19 and pg. 105: 5-21). Then Lacey ran off in the direction of Deputy Whitlow. Exh. 9 pg. 92: 1-8). R.A. went to meet his mother and she arrived a few minutes later to take the children home. (Exh. 7 pg. 3-17).

Deputy Whitlow testified that a male ran toward him and said a person had a gun. (Exh. 1 pg. 13: 6-12). The person who was said to have a gun was coming toward him. (Exh. 1 pg. 13 13-22). An altercation started. (Exh. 1 pg. 14: 14-18). Whitlow broke up the fight by holding the two boys up with his hands. (Exh. 1 pg. 15: 13-18). Whitlow arrested Q. J. and found that he had a gun in his back pocket. (Exh. 1 pg. 19: 15-32 and 20: 2-5). Deputy Washington was there when Whitlow did the pat down of Q.J. (Exh. 1 pg. 22: 3-10). Deputy Lacey came up when he placed Q.J. in the vehicle. (Exh. 1 pg. 22: 11-14). The incident was over within a matter of minutes. (Exh. 1 pg. 40: 14-23). It was around 9:40 p.m. when

---

[4] Exhibit 2—Incident Offense Report Q.J.
[5] Exhibit 7—Deposition of R.A.Jr.
[6] Exhibit 9—Deposition of Ronald Ligon

Whitlow placed Q.J. in his vehicle and around 9:50 p.m. when he left to take him to jail. (Exh. 1 pg. 34: 4-15).

Mrs. Arnold took her son to the doctor the following Monday because R.A. Jr.'s knee and thigh were very swollen and he was complaining of pain and bruising in his hip, shoulder, thigh and back. (Exh. 3 and Exh. 7 pg. 115: 12-23 and Exh. 7). Mrs. Arnold was instructed to follow up with R.A. Jr.'s pediatrician and took R.A. Jr. to Doctor Molley Walker who instructed R.A. Jr. to use crutches and return to the office if the symptoms did not get better. (Exh. 4).

Mr. and Mrs. Arnold visited the Macon County Sheriff to lodge a complaint against the officer who had struck their son. (Exh. 13[7] and Exh. 16[8]). When Deputy Lacey learned that the Arnold's had complained of their son's injuries he filed an Incident /Offense Report on October 12, 2005 charging R.A. Jr. with Riot and Disorderly Conduct a misdemeanor. (Exh. 8[9] pg. 72: 1-2). Lacey based his charges against R.A. Jr. on the fact that "the parents of the suspect came to Macon County Jail and identified their child as R.A. Jr." Lacey further stated that "at the time of the original report there was no name or information for the suspect." (Exh. 5[10] and Exh. 8 pg. 73: 21-22). Deputy Lacey could not see the person behind Deputy Whitlow on the night of the incident because he had his back to him and it was extremely dark (Exh. 8 pg. 87: 15-23 and pg. 88: 1-9). After Mr. and Mrs. Arnold complained, he identified R.A. Jr. as that person..(Exh. 8 pg. 73: 1-22).

Two months later on December 2, 2005 Deputy Lacey signed a warrant for the arrest of R.A. Jr. for Disorderly Conduct. (Exh. 6[11]). R.A. Jr. went to trial on this charge in Macon County Juvenile Court and was acquitted. (Exh. 16).

In addition to the arrest of Q.J. on the night of the football game, Deputy Lacey arrested M.J. for "Failure of a Disorderly Person to Disperse." Deputy Lacey states that the Plaintiff "came up behind

---

[7] Exhibit 13—10/26/05 Letter to County Commission
[8] Exhibit 16—Affidavit of Richard Arnold Sr.
[9] Exhibit 8—Deposition of Deputy Walter Lacey
[10] Exhibit 5—Incident Offense Report 10/12/05 Charging R.A.Jr.
[11] Exhibit 6: Warrant for Arrest of R.A. Jr. 12/2/06

4

Whitlow and started swinging at Johnson" (Def. SJ pg. 4¶1). R.A. Jr. did not come up behind Deputy Whitlow and was not in the area of Whitlow and Q.J. when Deputy Lacey struck him. (Exh. 8 pg. 102: 21-23 and pg. 103: 1-5).

## III. ARGUMENT

### A. FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIMS.

The factual disputes of this case give rise to two theories of examination regarding R.A. Jr.s excessive force claim. The proper analysis is dependent upon whether the arrest of R.A. Jr. was legal. It is undisputed that R.A. Jr. was not arrested on the night of the incident. It is also undisputed that the warrant for R.A. Jr.'s arrest was signed by Deputy Lacey nearly two months later. R.A. Jr. directly disputes that he was involved in any fighting when Deputy Lacey struck him with the baton. According to R.A. Jr. his brother had been fighting with Q.J. when Deputy Whitlow arrived. (Exh. 7 pg. 94: 15-23) The Deputy had let go of his brother and instructed them to leave. (Exh. 7 pg. 96: 1-23 and 971-10 and Exh. 9pg. 72: 9-20). R.A. Jr., his brother and friend, Raymond Swanson who had run to get Whitlow, left and went across the street. (Exh. 7 pg. 97: 17-21). After they had crossed the street, Deputy Lacey grabbed R.A. Jr. by the shirt from behind and began beating him with a stick and threw him on the ground. (Exh. 7 pg. 100: 10-20 and Exh. 9 pg. 84: 3-15).

According to Lacey he struck two persons with the baton that night and both of them were fighting. (Exh. 8 pg. 73: 21-22). The first person he struck was a boy who was kicking another boy on the ground. (Exh. 8 pg. 42: 6-13 and 46: 4-17). The second person he hit was reaching over Deputy Whitlow who had Q.J. in both hands. (Exh. 8 pg. 50: 4-14) He could not pull him away and he did not move when he told him to get on the ground. He struck the person twice in the thigh and once in the arm. (Exh. 8 pg. 51 and 52: 5-14).

R.A. Jr. was not the person Lacey describes as striking with his baton that night. Deputy Lacey could not identify the person that he had struck stating that it was "extremely dark" and he could see

5

height and weight but not faces. (Exh. 8 pg. 87 17-23). He said that R.A. Jr. was the person standing

behind officer Whitlow and described him as 5'7'' to 6' tall and 130-140 pounds. (Exh. 8 pg. 87: 23 and

pg. 88: 1-9). R.A. Jr. was 5'3" and 130 pounds at the time of the incident. (Exh. 4).

      The plaintiff makes claims for assault and battery, false imprisonment, and malicious prosecution.

These claims are based, in part, upon an unlawful arrest and the assault upon him with an ASB baton.

Clearly the plaintiff was not in lawful custody when the beating took place. If the facts, construed in favor

of the plaintiff, reasonably allow the conclusion that the arrest of R.A. Jr. was not based on probable cause

then R.A. Jr.'s excessive force claim would be subsumed into his other claims.

      The Eleventh Circuit explains:

> "Under this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is
> subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."
> Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000) (*citing* Williamson v. Mills, 65 F.3d
> 155, 158-59 (11th Cir. 1995)). The right to make an arrest "necessarily carries with it the
> right to use some degree of physical coercion or threat thereof to effect it." Graham v.
> Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-72, 104 L. Ed. 2d 443 (1989). It follows,
> then, if an arresting officer does not have the right to make an arrest, he does not have the
> right to use any degree of force in making that arrest.

Bashir v. Rockdale County, 445 F.3d 1323, 1331-1332 (11th Cir. 2006). However, this does not mean that

R.A. Jr.'s excessive force claim is not compensable. The Eleventh Circuit went on to explain in Bashir:

> This is not to say that Bashir cannot recover damages for the force used in his arrest. To the
> contrary, the damages recoverable on an unlawful arrest claim "include damages suffered
> because of the use of force in effecting the arrest." Williamson, 65 F.3d at 158-59; Motes v.
> Myers, 810 F.2d 1055, 1059 (11th Cir. 1987) (stating that "it is obvious that if the jury finds
> the arrest unconstitutional, the use of force and the search were unconstitutional and they
> become elements of damages for the § 1983 violation"). But, to permit a jury to award
> damages on Bashir's excessive force and unlawful arrest claims individually "would allow
> [him] to receive double the award for essentially the same claims." Cortez v. McCauley,
> 438 F.3d 980, 996 (10th Cir. 2006).

Bashir at 1332.

      If however, the facts show that Deputy Lacey's use of force was incident to a lawful seizure a

Fourth Amendment analysis is proper.

> The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the rights to be free from the use of excessive force in the course of arrest and the right to be free from arrest without probable cause. In the context of the qualified immunity analysis, the question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer. *Vinyard*, 311 F.3d at 1347. Thus, for the excessive force claim, this Court must ask whether a reasonable law enforcement officer would believe that the level of force used was necessary in the situation at hand. *Id.* Similarly for the unlawful arrest/unreasonable seizure claim, the Court must ask whether a reasonable law enforcement officer would have believed he had arguable probable cause to arrest.

Johnson v. Wright, 423 F. Supp. 2d 1242, 1256 (D. Ala. 2005).

R.A. Jr. was "seized" by Deputy Lacey when he assaulted him and threw him to the ground. As the Supreme Court announced in Terry v. Ohio "it must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry, 392 U.S. at 16, 88 S. Ct. 1868. It is only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. at 19 n. 16, 88 S. Ct. 1868; *see also* Courson v. McMillian, 939 F.2d 1479, 1488 (11th Cir.1991). Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

> Defendants' investigatory stop is governed by the Fourth Amendment which provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." Terry v. Ohio, 392 U.S. 1, 8-9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Supreme Court recently reaffirmed that "a brief encounter between a citizen and a police officer on a public street, is governed by the analysis ... first applied in Terry." Illinois v. Wardlow, 528 U.S. 119, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570 (2000). While there are circumstances under which a person may be briefly detained without probable cause to arrest him, "any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448 U.S. 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980). **This prohibition of searches and seizures that are not supported by some objective justification is applicable to the states through the Fourteenth Amendment,** see Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), and "governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." Reid, 448 U.S. at 440, 100 S. Ct. 2752.

Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000). (Emphasis added). In this case Plaintiff's

Fourteenth Amendment claim is not due to be dismissed because the facts support a finding that there was

no objective justification that force was necessary or that there was reasonable suspicion to believe that

R.A. Jr. was engaged in criminal activity.

According to the plaintiffs version of the facts he had left the location where his brother and Q.J.

were fighting and had walked across the street when Deputy Lacey ran up behind him, grabbed him and

beat him with a stick. Assuming that these facts are true, there was no justification for use of force against

him.

Recognizing that not all force used in the lawful arrest of a citizen is excessive, the Eleventh

Circuit has set forth three factors to be used in analyzing excessive force cases.

> The Eleventh Circuit Court of Appeals has interpreted the Supreme Court's language in
> Graham as requiring the balancing of three factors in determining whether the force applied
> was reasonable. Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004). These
> factors are the need for the application of force, the relationship between the need and
> amount of force used, and the extent of the injury inflicted.

Johnson v. Wright, 423 F. Supp. 2d 1242, 1254 (D. Ala. 2005).

**1.      The need for application of force.**

According to the Plaintiff, Deputy Lacey came up behind him and hit him with his baton four or

five times and then threw him to the ground and hit him twice. (Exh. 7 pg. 104: 13-23 and 105: 10-23 and

106: 1-4). R.A. was not engaged in any criminal activity when Lacey grabbed him as he was walking

across the street with his brother. (Exh. 7 pg. 97 17-23 and 98: 1-6). The fight, involving Ronald Ligon

and Q.J., was over and the boys had walked across the street. There would be no need for the application

of force because the fight was over and R.A. was not committing any crime which would cause Deputy

Lacey to stop him much less use force against him .Deputy Whitlow testified that within minutes the

altercation that involved R.A.'s brother and Q.J. was under control. (Exh. 1 pg. 40: 14-23). Ronald Ligon,

R.A. Jr.'s brother testified that the fight Whitlow had broken up between himself and Q.J. had lasted

approximately one minute. (Exh. 9: pg. 64: 16-23). Whitlow also testified that he was not aware that Lacey had used his baton that night. (Exh. 1 pg. 52 5-7). Even though Lacey said that he struck R.A. Jr. who was behind Deputy Whitlow and holding onto him so tight he couldn't pull him off. (Exh. 8 pg. 51: 1-23).

### 2.    The relationship between the need and the amount of force used.

R.A. Jr. was not posing a threat to anyone when Deputy Lacey grabbed him and struck him. R.A. Jr. was charged, by Deputy Lacey, with the misdemeanor offense of disorderly conduct and was acquitted of that offense at a trial. (Exh. 6). The force used by Lacey was capable of doing serious harm, especially to a child, and was excessive to effectuate a misdemeanor arrest even if R.A. Jr. was being disorderly. The "use of force that could cause death or serious harm to effectuate a misdemeanor arrest or detention is excessive" under the circumstances presented here. Baltimore v. City of Albany, 2006 U.S. App. LEXIS 14265, 2006 WL 1582044, *7 (11th Cir. 2006).

R.A. Jr. was not resisting arrest, back talking the officer, or acting unruly and he was not a threat to anyone. Deputy Lacey did not place R.A. Jr. under arrest he simply ran off to the patrol car where the other officer had Q.J. detained. (Exh. 9 pg. 91: 8-23 and 92: 1-9).

Deputy Lacey assumed that R.A. Jr. was behind officer Whitlow when he struck him. That assumption was wrong. Both R.A. and his brother Ronald testified that he was no where near Officer Whitlow when he was struck. Lacey could not identify R.A. Jr. as the person behind Officer Whitlow and Officer Whitlow had no recollection of Lacey using his baton behind him. (Exh. 1 pg. 17: 1-19; pg. 181-7 and 52: 5-7). Deputy Whitlow did not have to use force to detain the boy with the gun. (Exh. 1 pg. 30: 1-11). None of the other officers on the scene that night reported the use of force. (Exh. 13 and 14[12]).

### 3.    The extent of the injury inflicted.

---

[12] Exhibit 14—Statement of Deputy Tony Washington

R.A. Jr. suffered pain and bruising to his left hip, left shoulder, right lateral thigh and right back area. (Exh. 3). It required a trip to the emergency room two days after the incident. (Exh. 3). He continued to suffer pain and his thigh was very swollen. He followed up with his pediatrician, Dr. Walker, and used crutches for two weeks after the incident. (Exh. 4 and Exh. 10[13]).

Looking at the totality of the circumstances it is clear that all three factors weigh in favor of the plaintiff.  The circumstances here are nothing like those in Garrett which the defendants use as an example. (Def. S.J. Brief. pg. 8). In Garrett, a high-speed chase had taken place for over 30 miles which ended in the suspect ramming the officer's patrol car and the suspect refusing to get out of the vehicle. In this case you have a child whose brother had been involved in a fight with another youth. The fight was broken up by a police officer, who did not have the need to use force to make the arrest. The fight only lasted a few minutes at most and the plaintiff was walking away from the area where the police were detaining the other boy.

Contrary to the account recited in the defendant's brief, the plaintiff was not involved in a struggle with a Deputy Sheriff and an individual armed with a gun. R.A. had walked away from the scene of the fight and was no where near Deputy Whitlow when he was accosted. While it is true that Q.J. had a gun, it was not discovered until after the fight was broken up and he was patted down at the officer's vehicle; it was in his back pocket. (Exh. 1 pg. 19 15-32 and 20: 1-2). Deputy Whitlow asked for assistance over the radio and five police officers came to his aid. (Exh. 1 pg. 19: 1-2). A reasonable officer in Deputy Lacey's circumstances would not have used any force against R.A. Jr. None of the officers involved in the events of that night used force or deadly force to restore order.

## B.    ELEVENTH AMENDMENT IMMUNITY

Defendant Lacey, in his official capacity as a Deputy Sheriff, is not immune from liability simply because he is an officer of the state. His actions are covered within the scope of exceptions because

---

[13] Exhibit 10—Pictures of Injuries

Plaintiff has requested relief by declaratory judgment by entry of a judgment that the plaintiff was deprived of his civil rights and unlawfully assaulted and battered (Complaint pg. 7).

> To determine whether a state official is covered by eleventh amendment immunity, we consider the laws of the state. n4 See Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 280, 97 S. Ct. 568, 572, 50 L. Ed. 2d 471 (1977). In Parker v. Williams, 862 F.2d 1471 (11th Cir.1989), this court held that the eleventh amendment barred a section 1983 lawsuit against an Alabama sheriff in his official capacity. In response to this court's certified question in Parker, the Supreme Court of Alabama held that a sheriff is an executive officer of the state of Alabama, and thus is immune from lawsuits under the state constitution, **except for injunctive actions**.
>
> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute. Parker v. Amerson, 519 So. 2d 442, 443 (Ala.1987) (construing Ala. Const. art. I, § 14).

Carr v. Florence, 916 F.2d 1521, 1525 (11th Cir. 1990).

So far as monetary damages are concerned the Plaintiff has sued Deputy Lacey in his individual capacity. Sheriffs' deputies are not entitled to assert the absolute immunity of the Eleventh Amendment as a defense to actions against them individually" however, they may be entitled to qualified immunity. Caldwell v. Brogden, 678 So. 2d 1148, 1151-1152 (Ala. Civ. App. 1996).

## C.    QUALIFIED IMMUNITY

Under this doctrine, government officials "performing discretionary functions are shielded from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Greason v. Kemp, 891 F.2d 829,833 (11th Cir. 1990).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Toth v. City of Dothan, 953 F. Supp. 1502, 1507 (M.D. Ala. 1996) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

> The qualified immunity analysis consists of two separate components:   first, the government official must establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred, and second, the plaintiff must demonstrate that the official's actions violated clearly established rights. *Sims v.*

*Metropolitan Dade County*, 972 F. 2d 1230, 1236 (11ᵗʰ Cir. 1992). The term "discretionary authority" includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11ᵗʰ Cir. 1994) (quoting *Rich v. Dollar*, 841 F. 2d 1558, 1564 (11ᵗʰ Cir. 1988).

D.R. v. Phyfer, 906 F.Supp. 637,641 (M.D. Ala. 1995). It is not disputed that Deputy Lacey was performing his duties as a sheriff's deputy on the night in question. In order for the Plaintiffs to prevail, "[the Plaintiffs] must show that defendants violated [their] clearly established federal rights." Hansen v. Soldenwagner, 19 F. 3d 573 (11 Cir. 1994).

> [I]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard, 311 F.3d at 1346 (quoting Saucier, 533 U.S. at 201). In so doing, a court must do more than just compare the facts of the instant case to prior cases to determine if a right is clearly established; it must also assess whether the facts of the instant case fall within statements of general principle found in appropriate precedent. See, e.g., Hope, 536 U.S. at 741 "Officials can still be on notice that their conduct violates law even in novel factual circumstances. Indeed, in [United States v.] Lanier [, 520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)], we expressly rejected a requirement that previous cases be 'fundamentally similar.'"); Holloman v. Harland, 370 F.3d 1252, 1278; Vinyard, 311 F.3d at 1351. Indeed, the "salient question... is whether the state of the law...gave [the officers] fair warning that their alleged treatment [of the plaintiff] was unconstitutional." Hope, 536 U.S. at 741.
>
> Officials sued pursuant to § 1983 have a right to fair notice. *Id.* at 739. This notice can be given in three ways. Vinyard, 311 F.3d at 1350-53. First, the words of the federal statute or constitutional provision may in themselves be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law. Id. at 1350. Second, preexisting case law may serve to provide fair notice. Id. at 1351. Case law need not arise out of factually identical situations to clearly establish law for purposes of the qualified immunity analysis. *Id.* at 1351. Broad legal principles established in case law may serve to clearly establish the law even for cases arising out of factually different situations. *Id.* Third, in the absence of case law with a broad holding sufficient to provide fair notice, fact specific precedents may serve to clearly establish the law arising out of materially similar factual circumstances. *Id.* at 1351-52.

Johnson v. Wright, 423 F. Supp. 2d 1242, 1257-1258 (MD. Ala. 2005).

Deputy Lacey's action of using unnecessary and deadly force against a twelve year old child, without probable cause to believe he had committed a crime, violated the Fourth Amendment and was clearly established prior to October 2005.

12

> There can be no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment. See, e.g., <u>Von Stein v. Brescher</u>, 904 F.2d 572, 579 (11th Cir. 1990). Indeed, the Eleventh Circuit has repeatedly held that this legal tenant is "clearly established" for purposes of addressing qualified immunity claims by public officials. *See, e.g., Id.*; <u>Herren v. Bowyer</u>, 850 F.2d 1543, 1547 (11th Cir. 1988). *See also* <u>Babers v. City of Tallassee</u>, 152 F. Supp. 2d 1298, 1304 (M.D. Ala. 2001).

<u>Johnson v. Wright</u>, 423 F. Supp. 2d 1242, 1257-1258 (M.D. Ala. 2005).

A factually similar case to plaintiffs, decided in 1999, is that of <u>Nolin v. Isbell</u>. In that case three police officers sitting in a café observed two young men fighting outside. The young men were actually engaged in horseplay. By the time the officers came to where the two young men were, the fighting had ceased. They were arrested for disorderly conduct and claimed that excessive force had been used against them. The Court stated:

> How Isbell behaved once he had probable cause to believe that Nolin and Peede were disorderly, and the manner in which he proceeded to arrest the plaintiff is more questionable. **The plaintiff and Peede had ceased fighting. The offense of disorderly conduct, which Isbell had probable cause to suspect Nolin had committed, is a relatively minor one, a class C misdemeanor under Alabama law. Further, there was no indication that the plaintiff posed any threat to Isbell.** Given Isbell's antagonism to "long-haired acid freaks," from Isbell's estimation a class into which the plaintiff fell, the court considers whether Isbell's belief that the plaintiff posed a threat is what it seems. Indeed, a reasonable trier of fact could conclude that, from the position of a reasonable officer, Nolin made no attempt to threaten anyone and did not pose a threat to the officer. Further, it is undisputed by the parties that the plaintiff made no attempt to resist Isbell's arrest of him. The court concludes that, in arresting the plaintiff, Isbell violated the Fourth Amendment's protection against unreasonable searches and seizures.

<u>Nolin v. Town of Springville</u>, 45 F. Supp. 2d 894, 906 (N.D. Ala. 1999).

Similar to <u>Nolin</u>, the fight that R.A.'Jr.'s brother had been involved in was over when Lacey arrived on the scene. The boys were simply walking toward their destination and were not involved in any type of disorderly conduct when Lacey assaulted R.A. Jr. Even if Lacey mistakenly believed that R.A. Jr. had previously been involved in the fight, he did not have cause at that point to use deadly force or any force against him.

13

Whether probable cause exists is a factor to be considered in evaluating the objective seriousness of the crime on which the use of force is premised and the objective threat posed by the plaintiff to himself or others; its absence, however, is highly indicative that any force used was unreasonable. See Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998). In the instant action, Isbell was engaged in making an arrest of Nolin on the grounds that he had violated Alabama's disorderly conduct statute. In the present case, given that Isbell was attempting an arrest, if he lacked probable cause for making that arrest, he had no justification to utilize force against the plaintiff, as the determination of whether the plaintiff posed a threat or would resist arrest is largely premised on the contention that the plaintiff was likely engaged in disorderly conduct.

Nolin v. Town of Springville, 45 F. Supp. 2d 894, 904-905 (D. Ala. 1999) (Reversed on other grounds).

The general principal that force is excessive if used to affect a misdemeanor arrest where there was no resistance or threat of harm to the officer or others is discussed in Baltimore. In Baltimore there was a crowd that actually did try to interfere with the arrest of Baltimore for violation of an open container law. Baltimore was struck in the head and shoulder with a flashlight. The Eleventh Circuit found that the general constitutional rule already identified in case law that the use of force that could cause serious harm to effectuate a misdemeanor arrest was excessive provided obvious clarity to the defendant that his conduct was unconstitutional.

> Even under the chaotic circumstances of the moment, the fact remains that four officers were engaged in arresting Baltimore for violating a city ordinance. Although a hostile crowd tried to abort the arrest, there is no indication that Baltimore was going to escape the grasp of the officers. Reasonable officers in Long's situation would not have violently struck a misdemeanor suspect, who was being subdued by several officers, in the head with a blunt object to effectuate an arrest for violating the city's open container ordinance.
>
> This is a case where a "general constitutional rule already identified in the decisional law . . . appl[ied] with obvious clarity" to Long's conduct, as use of force that could cause death or serious harm to effectuate a misdemeanor arrest was excessive under these circumstances. See United States v. Lanier. 520 U.S. 259, 271, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997); Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987); Vaughan, 343 F.3d at 1332, quoting Hope, 536 U.S. at 741, 122 S. Ct. at 2516 HN10("the Supreme Court in Hope cautioned that we should not be unduly rigid in requiring factual similarity between prior cases and the case under consideration. The 'salient question' . . . is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional").

Baltimore v. City of Albany, 183 Fed. Appx. 891, 899 (11th Cir. 2006). The logic applied in Baltimore applies to this case.

Even if <u>Nolin</u> is not factually similar enough to provide notice, this case presents facts and circumstances that demonstrate the conduct of Deputy Lacey was so plainly incompetent and so obviously wrong that it falls within the narrow exception allowing this case to proceed without the necessity of pointing to prior cases where factually similar behavior has been found unconstitutional.

R.A. Jr. can "overcome qualified immunity [] by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." <u>Smith v. Mattox</u>, 127 F. 3d 1416, 1420 (11th Cir. 1997) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The failure to identify a factually similar case is not determinative on the issue of qualified immunity. <u>Priester v. City of Riviera Beach</u>, 208 F. 3d 919 (11th Cir. 2000). Thus the question that remains is whether, absent a controlling factually on-point case, Deputy Lacey's actions of striking a child with an ASB baton when there was no crime being committed by R.A. Jr. in his presence and R.A. Jr. presented no immediate danger to himself or others, so obviously impacts the very core of the Fourth Amendment that the unlawfulness of his conduct should have been readily apparent.

Contrary to Deputy Lacey's account, Plaintiff was not struggling with Deputy Whitlow and never had been. R.A. Jr. had already left the scene where Q.J. was being arrested. Deputy Lacey can not identify R.A. Jr. as the person behind Deputy Whitlow. Deputy Whitlow did not report anyone pulling on him or holding onto him. He reported there was arguing behind him. The situation simply did not call for the use of deadly force.

## D.    STATE LAW CLAIMS

### i.    Absolute Immunity

The Defendant's argument that Deputy Lacey is absolutely immune from suit pursuant to Article V, § 112 and Article I, § 14 of the Alabama Constitution of 1901 for all violations of state law is simply a misstatement of law. Plaintiffs agree that Deputy Sheriffs, such as Deputy Lacey, are immune under the

aforementioned Articles; however, the Defendants fail to point out that there are five (5) exceptions to sovereign immunity provided to Sheriffs and deputies. These five exceptions are:

> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, **(4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law**, or (5) to seek construction of a statute under the Declaratory Judgment Act if his is a necessary party for the construction of a statute.

Armstrong v. Carter, 1998 U.S. Dis. Lexis 3062 (S.D. Ala. 1998); *citing* Parker v. Amerson, 519 So. 2d 442, 442-43 (Ala. 1987). The Alabama Supreme Court in Phillips v. Thomas, 555 So. 2d 81 (Ala. 1989) has held that a state officer or employee, such as Sheriffs and Deputies, may not escape individual tort liability by "arguing that his mere status as a state official cloaks him with the state's constitutional immunity." *Id.* at 84; *see also,* Barnes v. Dale, 530 So. 2d 770, 781 (Ala. 1988).

Further, the Alabama courts have clearly held that "a state officer or employee is not protected by §14 when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under mistaken interpretation of the law." Lumpkin v. Cofield, 536 So. 2d 62, 65 (Ala. 1988); DeStafney v. University of Alabama, 413 So. 2d 391, 393 (Ala. 1981); Gill v. Sewell, 356 So. 2d 1196, 1198 (Ala. 1978).

As explained in the previous section entitled Eleventh Amendment Immunity, Plaintiff has also sought declaratory relieve that the acts of Deputy Lacey were unlawful and violated his constitutional rights. Insofar as non-monetary relief is sought, Deputy Lacey is not entitled to absolute immunity and his official capacity claim is not due to be dismissed. "Alabama law recognizes at least two types of immunity from suit or liability for the individual executive acts of public officers. Not applicable here, is the absolute "sovereign" immunity, except for injunctive relief, afforded to certain state constitutional officers, including sheriffs and deputy sheriffs.

Hardy v. Town of Hayneville, 1999 U.S. Dist. LEXIS 4219 (D. Ala. 1999).

### ii.    Discretionary Function Immunity.

In this case, plaintiff presents evidence that the acts of Deputy Lacey were committed willfully, maliciously, and in bad faith. These are exceptions to discretionary function immunity and if the facts viewed in the light most favorable to the plaintiff could lead a reasonable person to conclude that Deputy Lacey acted willfully, maliciously and/or in bad faith; he is not entitled to discretionary function immunity. The Eleventh Circuit has said: "Even if the individual defendants were engaged in discretionary functions at the time of their allegedly tortious conduct, they would not be entitled to discretionary function immunity if their conduct was willful, malicious, or in bad faith." Hardy v. Town of Hayneville, 50 F. Supp. 2d 1176 (D. Ala. 1999).

Deputy Lacey exercised his discretionary function willfully, maliciously or in bad faith. As has been discussed previously, Deputy Lacey's use of his ASB baton was excessive under the circumstances. The plaintiff was not engaged in criminal activity, he was not being belligerent and uncooperative, he was not resisting a lawful arrest or resisting in any manner. The situation did not call for deadly force or any force which could cause serious injury.

### i.    Assault and Battery.

The Alabama Supreme Court defined "assault" as "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." Wright v. Wright, 654 So. 2d 542, 544 (Ala.1995). A battery "consists of the touching of another in a hostile manner."    (Citations omitted) Hardy v. Town of Hayneville, 1999 U.S. Dist. LEXIS 4219 (M.D. Ala. 1999).

Deputy Lacey actions were intentional and unlawful. Deputy Lacey had no lawful reason to use force against R.A. Jr. who was not engaged in any unlawful activity. R.A. Jr. testified:

"And then we went across the street, when I got about right up in here, after the fight was broken up [] that was when somebody came and grabbed me from right here on the left side of my shirt[]. (Exh. 7 pg. 97: 23 and 98: 1-14.) The fight was over here on this side of the street (Exhibit 11[14]) and after the police gave my brother, Ronald Ligon, to Raymond, we had got over here on this side of the street over on this side. And that's when somebody just ran behind me and grabbed me and just started beating me with a stick." (Exh. 7 pg. 102: 21-23 and 103: 1-5).

**Q.** Did you say anything to the officer while you were being struck four or five times while you were standing up and then twice while you were on the ground?

**A.** No Sir.

**Q.** And why didn't you say anything? A. Because I was too busy crying and screaming. (Exh. 7: 112: 19-23 and 113: 1-4) and (Exh. 9 pg. 3-15).

Even if Deputy Lacey mistakenly believed that R.A. Jr. had been involved in the fight with the other boy, when he assaulted R.A. Jr. there was no fight going on and his use of force was unlawful. He did not attempt to arrest the R.A. Jr.

Deputy Lacey's account of the facts is different from that of R.A. Jr. and thus creates a question of material fact. Plaintiff's assault and battery claim is not due to be dismissed.

## II.    FALSE IMPRISONMENT.

False imprisonment "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala.Code § 6-5-170 (1975). For there to be a false imprisonment, "there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." Big B, Inc. v. Cottingham, 634 So. 2d 999, 1001 (Ala.1993).

Hardy v. Town of Hayneville, 1999 U.S. Dist. LEXIS 4219 (D. Ala. 1999).

---

[14] Exhibit 11—Pictures of area where incident occurred.

Contrary to the argument presented by the defendant, it is not necessary for a person to be "detained" to be deprived of his personal liberty. Clearly under the plaintiff's facts he was grabbed and thrown to the ground. Even if the encounter was brief, it was definitely against his will and thus was an unlawful detention.

Under Alabama law a wrongful arrest will support a false imprisonment claim: "A wrongful or false arrest will support a claim for false imprisonment. Upshaw v. McArdle, 650 So.2d 875, 878 (Ala. 1994). Officer Allums argues that his arrest of Stovall was lawful, and therefore privileged, because he had probable cause to believe Stovall had committed the offense of disorderly conduct." See Franklin v. City of Huntsville, 670 So.2d 848, 852, (Ala. 1995) *cited in* Stovall v. Allums, 2005 U.S. Dist. LEXIS 29146,40-41(M.D.Ala.2005).

Under plaintiffs version of the facts Deputy Lacey did not have probable cause, or even arguable probable cause, to believe that R.A. Jr. had committed the crime which he was later charged with.

> A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) Engages in fighting or in violent tumultuous or threatening behavior; or
> (2) Makes unreasonable noise; or
> (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
> (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.
> Ala. Code § 13A-11-7 (1975). Stovall was charged with violating (6) of the disorderly conduct statute.
>
> Disorderly conduct is a misdemeanor offense in Alabama, thus a law enforcement officer may not make a warrantless arrest for that offense unless the unlawful acts are committed in the officer's presence. Ala. Code § 15-10-3 (1975); Ala. R. Crim. P. 4.1(a).

Stovall v. Allums, 2005 U.S. Dist. LEXIS 29146, 21-22 (D. Ala. 2005).

When Deputy Lacey came up on R.A. Jr. he was not fighting or involved in violent or tumultuous behavior. Even if Deputy Lacey had seen R.A. Jr. while his brother was fighting with Q.J. he would not have had reason to believe that R.A. Jr. had been involved. R.A. Jr. had tried one time to pull his brother

away from Q.J. before Deputy Whitlow arrived. (Exh. 9 pg. 98: 9-21 and Exh. 7 pg. 75: 12-19). Deputy

Lacey admits he did not arrive to the location where Deputy Whitlow was until after Whitlow had both

boys in his hands. (Exh. 8 pg. 47 and 48).

Deputy Lacey, two months later, signed a warrant for the arrest of R.A. Jr. He based his identity of

the suspect on the fact that R.A. Jr.'s parents had complained to the Sheriff that their son was hurt. He

assumed that R.A. Jr. was guilty of disorderly conduct because the boys he had hit that night "were both

fighting." However, R.A. Jr. was not fighting that night. Deputy Lacey did not do any independent

investigation to find out whether R.A. Jr. was the suspect guilty of disorderly conduct. The boys arrested

were not questioned about the identity of the other persons involved. (Exh. 2 and Exh. 17[15]). Ronald

Ligon and Mrs. Arnold filed a complaint against Q.J. with the police department the same night therefore,

the information was readily available for Deputy Lacey to inquire into the identity of the persons involved

in the fight that night.

### III.    MALICIOUS PROSECUTION

In order to prevail on such a claim, a plaintiff has the burden at trial to prove the following
elements: "(1) that the present defendant instituted a prior judicial proceeding against the
present plaintiff; (2) that in instituting the prior proceeding the present defendant acted
without probable cause and with malice; (3) that the prior proceeding ended in favor of the
present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior
proceeding." Walker, 140 F. Supp. 2d at 1263-1264 (quoting Delchamps, Inc. v. Bryant,
738 So.2d 824, 831-32 (Ala. 1999)). Officer Allums argues that Stovall cannot prove either
the lack of probable cause or malice under the second element above. He also argues that
he is entitled to immunity on this claim under § 6-5-338.

In addition, the Alabama Supreme Court recently explained with respect to the elements of
malice and probable cause:

Malice is an inference of fact, and it may be inferred from a lack of probable cause or from
mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or
unlawful. Bryant, 738 So.2d at 833. Personal ill will or a desire for revenge is not essential
for a finding of malice. Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala. 1992).
However, an inference of malice drawn from the lack of probable cause may be rebutted by
evidence showing that the defendant acted in good faith. Bryant, 738 So.2d at 832.

---

[15] Exhibit 17—Incident Offense Report M.J. 10/07/05

Stovall v. Allums, 2005 U.S. Dist. LEXIS 29146, 46-47 (D. Ala. 2005).

Plaintiff has discussed the lack of probable cause of Deputy Lacey in the previous section and therefore will not reiterate it here. Even though an inference of malice can be drawn from the lack of probable cause in arresting R.A. Jr., his malice can also be inferred from his institution of the prosecution two months after the incident. Lacey claims that he knew that it was R.A. Jr. because he only hit the two people who were fighting. However, if a trier of fact believed the plaintiff's version of the facts, they would infer that Lacey hit more than two persons with his baton that night. There is evidence that Deputy Lacey hit at least three people, not two, with his baton that night. (Exh.12[16]).

Deputy Lacey states that he struck a person who was kicking another person on the ground. (Exh. 8: pg. 40 9-19). None of the other officers mention this fight in their reports. Deputy Washington who was running with Lacey to where Deputy Whitlow was does not mention another fight. (Exh. 14). Detective Motley who was behind Deputy Washington and Lacey also does not mention that there was a person being kicked before reaching Deputy Whitlow. (Exh. 15[17]).

There is also evidence that Q.J. and M. J. who were involved in the incident and could have known the identity of the boy standing behind Deputy Whitlow were arrested and taken to the police station. There is no evidence that any attempt to discover the identity of the person Lacey says was holding onto Deputy Whitlow or the person Lacey said was kicking the child on the ground were questioned in order to identify a suspect. It could be inferred that the officers intentionally did not inquire further. Deputy Whitlow did state that he was not aware that Deputy Lacey had used his baton that night.

It was not until Mr. and Mrs. Arnold lodged complaints that Deputy Lacey assumed that R.A. Jr. was the person standing behind Deputy Whitlow. On October 26, 2005 Mrs. Arnold wrote to the County Commission regarding the assault on her son. (Exh. 13).

---

[16] Exhibit 12—Affidavit of Raymond Swanson
[17] Exhibit 15—Statement of Detective Motely

Because it could be inferred that Deputy Lacey instituted the charges against R.A. Jr. to protect himself from accusations of wrongdoing a trier of fact could also conclude that his actions were malicious.

## IV.    CONCLUSION

This case presents two opposing factual accounts of an incident which will require resolution by a trier of fact. Taking the plaintiff's and his witnesses account of the facts as true, which the court must do at this stage of the proceedings, Deputy Lacey does not enjoy the protection of immunity.

Assuming that the facts of the plaintiff are true, Deputy Lacey was unjustified and unreasonable in his use of force against the plaintiff. The situation which was under control within minutes did not require the use of force. Lacey's assumption that R.A. Jr. was the person fighting is not proof that R.A. Jr. committed a crime. The testimony of other officers at the scene does not support Deputy Lacey's version of the material facts.

For all of the foregoing reasons the case is not due to be dismissed and Defendant's Motion for Summary Judgment is due to be DENIED.

Respectfully submitted this the 29th day of January, 2007.


s/Arlene M. Richardson
Bar Number ASB 9452-I60A
Attorney for the Plaintiff
**Richardson Legal Center, L.L.C.**
P.O. Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
E-mail: arlawyer@htcnet.net

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

C. Winston Sheehan, Jr.  wsheehan@ball-ball.com, rsmith@ball-ball.com

And certify that I have hereby mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE
Respectfully submitted,

**s/Arlene M. Richardson**
Bar Number ASB 9452-I60A
Attorney for the Plaintiff
**Richardson Legal Center, L.L.C.**
P.O. Box 971
Hayneville, Alabama 36040
Telephone: (334) 548-5660
Fax: (334) 548-5661
E-mail: arlawyer@htcnet.net

# TABLE OF AUTHORITIES

## CASES:

Armstrong v. Carter, 1998 U.S. Dis. Lexis 3062 (S.D. Ala. 1998) . . . . . . . . . . . . . . . . . . . . . . . .16

Barnes v. Dale, 530 So. 2d 770, 781 (Ala. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bashir v. Rockdale County, 445 F.3d 1323, 1331-1332 (11th Cir. 2006) . . . . . . . . . . . . . . . . . 6

Baltimore v. City of Albany, 2006 U.S. App. LEXIS 14265, 2006
WL 1582044, *7 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Caldwell v. Brogden, 678 So. 2d 1148, 1151-1152 (Ala. Civ. App. 1996) . . . . . . . . . . . . . . . 11

Carr v. Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Courson v. McMillian, 939 F.2d 1479, 1488 (11th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

DeStafney v. University of Alabama, 413 So. 2d 391, 393 (Ala. 1981) . . . . . . . . . . . . . . . . . . 16

D.R. v. Phyfer, 906 F.Supp. 637,641 (M.D. Ala. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Franklin v. City of Huntsville, 670 So.2d 848, 852, (Ala. 1995) . . . . . . . . . . . . . . . . . . . . . . . .19

Garrett v. Athens-Clark County, Georgia, 378 F.3d 1274 (11th Cir. 2004) . . . . . . . . . . . . . . .10

Gill v. Sewell, 356 So. 2d 1196, 1198 (Ala. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Greason v. Kemp, 891 F.2d 829,833 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hansen v. Soldenwagner, 19 F. 3d 573 (11 Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hardy v. Town of Hayneville, 1999 U.S. Dist. LEXIS 4219 (D. Ala. 1999) . . . . . . . . . 17, 18, 19

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Johnson v. Wright, 423 F. Supp. 2d 1242, 1256 (D. Ala. 2005) . . . . . . . . . . . . . . . . . .7, 8, 12, 13

Lumpkin v. Cofield, 536 So. 2d 62, 65 (Ala. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Malley v. Briggs, 475 U.S. 335, 341 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Nolin v. Town of Springville, 45 F. Supp. 2d 894, 906 (N.D. Ala. 1999) . . . . . . . . . . . . . . .13, 14

Parker v. Amerson, 519 So. 2d 442, 442-43 (Ala. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Phillips v. Thomas, 555 So. 2d 81 (Ala. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Priester v. City of Riviera Beach, 208 F. 3d 919 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 15

Smith v. Mattox, 127 F. 3d 1416, 1420 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Stovall v. Allums, 2005 U.S. Dist. LEXIS 29146, 40-41 (M.D. Ala. 2005) . . . . . . . . 19, 20, 21

Toth v. City of Dothan, 953 F. Supp. 1502, 1507 (M.D. Ala. 1996) . . . . . . . . . . . . . . . . . . . . 11

Upshaw v. McArdle, 650 So.2d 875, 878 (Ala. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Wright v. Wright, 654 So. 2d 542, 544 (Ala.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES:**

Article V, § 112 and Article I, § 14 of the Alabama Constitution of 1901 . . . . . . . . . . . . . . . . 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| R.A.Jr., (a minor child, by and through his | ) | |
| Father and next best friend, Richard Lemmel | ) | |
| Arnold, | ) | |
|       Plaintiff, | ) | |
| | ) | **Case No.: 3:06-CV-337-WHA** |
| v. | ) | |
| **DEPUTY SHERIFF WALTER LACEY,** | ) | |
| in his official and individual capacity | ) | |
|       Defendant. | ) | |

## PLAINTIFF'S SUMMARY JUDGMENT EXHIBIT LIST

Exhibit 1: Deposition of Deputy Eric Whitlow

Exhibit 2: Incident Offense Report Q.J. 10/7/05

Exhibit 3: Emergency Room Record 10/10/05

Exhibit 4: Medical Records: Dr. Walker 10/13/05 and 10/20/05

Exhibit 5: Incident Offense Report 10/12/05 charging R.A. Jr

Exhibit 6: Warrant for Arrest of R.A. Jr. 12/2/06

Exhibit 7: Deposition of R.A. Jr.

Exhibit 8: Deposition of Deputy Walter Lacey

Exhibit 9: Deposition of Ronald Ligon

Exhibit 10: Pictures of injuries.

Exhibit 11: Picture of area where incident occurred.

Exhibit 12: Affidavit of Raymond Swanson.

Exhibit 13: 10/26/05 Letter to County Commission.

Exhibit 14: Statement of Deputy Tony Washington.

Exhibit 15: Statement of Detective Motely.

Exhibit 16: Affidavit of Stephanie Arnold

Exhibit 17: Incident Offense Report M.J. 10/7/05