IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| R.A., Jr., a minor child, by and through his father and next best friend, Richard Lemmel Arnold, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO.  3:06cv337-WHA |
| DEPUTY SHERIFF WALTER LACEY, in his official and individual capacity, | ) ) ) | (WO) |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment (Doc. #17) filed by Defendant Deputy Sheriff Walter Lacey on January 5, 2007, a Motion to Strike (Doc. #22) filed by Plaintiff R.A., Jr. on January 26, 2007, and a Motion to Strike (Doc. #28) filed by Defendant Deputy Sheriff Lacey on February 5, 2007.  The Plaintiff, R.A., Jr., a minor child, by and through his father and next best friend, Richard Lemmel Arnold, originally filed a Complaint in this court on April 13, 2006, bringing claims for (1) a violation of rights guaranteed by the Fourth and Fourteenth Amendments, actionable under 42 U.S.C. §1983 (Count One), (2) assault and battery (Count Two), (3) false imprisonment (Count Three), and (4) malicious prosecution (Count Four).

For reasons to be discussed, the Defendant's Motion for Summary Judgment is due to be GRANTED, in part, and DENIED, in part, and both Motions to Strike are due to be DENIED, as moot.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Under Rule 56© of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of

the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See*

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court

must grant summary judgment if there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©.

## III. FACTS

Both the Plaintiff and the Defendant have presented different versions of the facts

pertinent to this case. Nonetheless, viewed in a light most favorable to the nonmovants as the

court is required to do,[1] the submissions of the parties establish the following facts:

A fight occurring outside of the stadium at the Booker T. Washington High School

homecoming game in Tuskegee, Alabama on October 7, 2005 serves as the catalyst for this

action. Acting within the scope of his employment as a Macon County Deputy Sheriff, Deputy

Sheriff Lacey provided security for the aforementioned football game. He was assigned to the

inside area of the football stadium. As Deputy Sheriff Lacey and Deputy Sheriff Whitlow left

the stadium area near the end of the football game, a young man named R.S. approached Lacey

and Whitlow and indicated that there was a person in the parking lot with a gun. Lacey and

Whitlow proceeded quickly to the parking lot area. While in transit, Whitlow put in a radio call

notifying other law enforcement officers of the situation, and several other officers also

proceeded to the parking lot area.

---

[1] It is important to point out that the conflicting versions of the pertinent facts are distinctly different, leading the court to believe that only one party ultimately can substantiate his version of the facts. At this time, however, it is not the court's duty to weigh the evidence. Instead, the court views the submitted evidence in a light most favorable to the nonmovant Plaintiff. Therefore, the facts noted in this opinion are stated under that specific framework.

Before the officers arrived, a fight broke out between Q.J., a minor child, who allegedly possessed a gun, and the Plaintiff's brother, R.L., a minor child. Whitlow stopped the fighting between Q.J. and R.L. by standing in between them, and he told R.S. to take R.L. away from the area where the fight had occurred. R.S. escorted R.L. across the street from the fight area. R.A., Jr., who was twelve years old, was with them at that time.

During the time period when Whitlow broke up the fight between Q.J. and R.L., Lacey attempted to break up a separate fight occurring in close proximity. Upon gaining control of that situation and noticing that Whitlow still was attempting to control the other situation, Lacey proceeded to help Deputy Sheriff Whitlow. According to the Plaintiff's submitted evidence, Lacey approached the Plaintiff from behind, grabbed him by the collar, slung him to the ground, and hit him several times with his ASP baton, without provocation and even though R.A., Jr., R.L. and R.S. had crossed the street and were no longer involved in any altercation. As a result of the blows from the baton, R.A., Jr. suffered various injuries. R.A., Jr. was not arrested at the time of the incident. Lacey later swore out a warrant for his arrest on a charge of disorderly conduct, but R.A., Jr. was acquitted of the charge.

## IV. <u>DISCUSSION</u>

The Plaintiff's Complaint alleges numerous counts against the Defendant (both individually and in his official capacity as a deputy sheriff). To avoid any confusion, the court will discuss the counts against the Defendant separately regarding both capacities, individual and official. The court will then proceed to the matter regarding the Motions to Strike.

**A.** *Claims Against Deputy Sheriff Lacey in his Official Capacity*

**1.** *Count One - Violation of Constitutional Rights, Actionable Under 42 U.S.C. §1983*

4

Regarding claims for monetary damages under Section 1983 against the Defendant in his official capacity as a deputy sheriff, the Plaintiff cannot maintain any such claims due to the lack of subject matter jurisdiction under the Eleventh Amendment to the Constitution of the United States.  "[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), *overruled on other grounds by Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).  Furthermore, "[i]n the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendants is proscribed by the Eleventh Amendment." *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th  Cir. 1990) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

"To determine whether a state official is covered by Eleventh Amendment immunity, [federal courts] consider the laws of the state." *Carr*, 916 F.2d at 1525.  Under Alabama law, it is well-settled that sheriffs are executive officers of the state.  As a result, Alabama courts consider suits against a sheriff as suits against the state. *Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987) ("A sheriff is an executive officer of the State of Alabama. . . ."); *see also McMillan v. Monroe County, Ala.*, 520 U.S. 781, 789 (1997) (holding that, based on an analysis of Alabama law, sheriffs are state officers and suits against them in their official capacity are suits against the state).  Alabama law further recognizes that "[i]n general, the acts of the deputy sheriff are the acts of the sheriff.  The deputy sheriff is the alter ego of the sheriff." *Hereford v. Jefferson County*, 586 So. 2d 209, 210 (Ala. 1991) (quoting *Mosely v. Kennedy*, 17 So. 2d 536, 537 (Ala. 1944)); *see also Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) (recognizing that a sheriff's deputy is legally an extension of the sheriff); *Carr*, 916 F.2d at 1525 (recognizing that

5

a deputy's acts generally are considered acts of the sheriff).  Accordingly, the court must consider this suit against the Defendant in his official capacity as a suit against the state.

The Plaintiff's contention that, because he seeks equitable relief in his Complaint, this case falls within an exception to the application of Eleventh Amendment immunity, citing *Carr*, 916 F.2d at 1525, is misplaced.  The exceptions referred to there are for injunctive actions:

> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Id.*  The Plaintiff seeks no such relief in his Complaint, nor would any such relief be appropriate in an action such as this.

Because the Eleventh Amendment bars federal suits against the state, in the absence of consent, this court has no jurisdiction to hear Plaintiff's federal law claims against the Defendant in his official capacity.  Therefore, with regard to the Plaintiff's Section 1983 claims against the Defendant in his official capacity as a deputy sheriff, the Defendant's Motion for Summary Judgment is due to be GRANTED.

### 2. *Counts Two, Three and Four - State Law Actions*

With regard to the state law tort claims alleged in Counts Two, Three and Four against the Defendant in his official capacity as a deputy sheriff, the Defendant is absolutely immune from such claims under the Alabama Constitution.  As noted above, Alabama law considers sheriffs as executive officers of the state.  As a result, Section 14 of Article 1 of the Alabama Constitution grants sovereign immunity to sheriffs as executive officers.  *Hereford*, 586 So. 2d at 210 (citing Ala. Const., art. 1, § 14 ("[T]he State of Alabama shall never be made a defendant in

any court of law or equity.")); *see also McMillan*, 520 U.S. at 789 (holding that, based on an analysis of Alabama law, sheriffs are state officers and suits against them in their official capacity are suits against the state). Alabama law also recognizes that "the acts of the deputy sheriff are the acts of the sheriff[,]" and deputy sheriffs are considered the alter egos of the sheriff. *Hereford*, 586 So.2d at 210. Thus, it follows logically that a deputy sheriff receives the same privilege of sovereign immunity as a sheriff. *See Wright v. Bailey*, 611 So. 2d 300 (Ala. 1992) (holding that, because a sheriff would have immunity in a suit alleging negligent failure to perform an arrest, two deputy sheriffs also would be entitled to such immunity). Accordingly, under this premise, the Defendant receives absolute immunity from suits against him in his official capacity under Section 14 of Article I of the Alabama Constitution.

As noted previously in regard to Eleventh Amendment immunity, exceptions to the state law sovereign immunity enjoyed by a sheriff, or a deputy sheriff, under the Alabama Constitution apply only in situations where plaintiffs seek prospective injunctive relief. *See Tinney v. Shores*, 77 F.3d 378, 383 (11 th Cir. 1993) ("The Alabama Supreme Court explained that under Article I, §14 [of the Alabama Constitution], the only exceptions to a sheriff's immunity from suit are actions brought to enjoin sheriff's conduct."). As noted above, the Alabama Supreme Court has stated that, under Section 14 of Article I of the Alabama Constitution, sheriffs are immune from suit except in actions

> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Carr,* 916 F.2d at 1525; *see also Parker*, 519 So. 2d at 443.  Just as was pointed out in regard to

Eleventh Amendment immunity, however, none of these exceptions fits the claims made in this

case.

So, just as the Plaintiff's federal law official capacity claim is barred by Eleventh

Amendment immunity, the state law tort claims alleged in Counts Two, Three and Four against

the Defendant in his official capacity as a deputy sheriff are barred absolutely because of the

Defendant's state immunity from such claims under the Alabama Constitution.  Therefore, as to

these Counts, the Defendant's Motion for Summary Judgment is due to be GRANTED.

**B. *Claims Against Deputy Sheriff Lacey in his Individual Capacity***

**1. *Count One - Violation of Constitutional Rights, Actionable Under 42 U.S.C. §1983***

Determining whether summary judgment is appropriate regarding the Plaintiff's Section

1983 claims against the Defendant in his individual capacity requires this court to address the

defense of qualified immunity.

"The doctrine of qualified immunity insulates government agents from personal liability

for money damages for actions taken in good faith pursuant to their discretionary authority."

*Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1275 (M.D. Ala. 2005) (citing *Harlow v. Fitzgerald*,

457 U.S. 800 (1982)).  "The purpose of this immunity is to allow government officials to carry

out their discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal

law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  The basic premise of the doctrine

is for immunity to harbor government officials from liability unless their conduct violated

"clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.

To determine whether a government agent is eligible for qualified immunity, a three-part analysis, guided by Eleventh Circuit and Supreme Court precedent, is appropriate.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1346-47 (11th Cir. 2002).   "To receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Vinyard*, 311 F.3d at 1346 (quoting *Lee*, 284 F.3d at 1194).  Upon satisfying the discretionary authority threshold, a two-part inquiry remains.  According to the Supreme Court, the initial inquiry then is whether the facts alleged, taken in a light most favorable to the plaintiff, demonstrate that the government official's conduct violated a constitutional right of the plaintiff.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court finds no constitutional violation, no further inquiry is necessary.  *Id.*   However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*   Accordingly, in order to determine whether to grant the present Motion for Summary Judgment, the court will apply this three-part analysis to the alleged facts of the case at bar.

### a. *Scope of Discretionary Authority*

The parties agree in their pleadings and briefs that the Defendant was acting within the scope of his discretionary authority, so this is not an issue.

### b. *Violation of a Constitutional Right*

The Plaintiff's Complaint alleges that the Defendant used excessive force against him, thereby violating his Fourth and Fourteenth Amendment rights.  Considering the circumstances

of this case, however, the court finds that the alleged use of excessive force only implicates the Plaintiff's Fourth Amendment rights.  Where an excessive force claim arises in the context of an arrest, an investigatory stop, or other seizure of a free person, the claim invokes Fourth Amendment protections - guaranteeing the citizen the right to be free from unreasonable seizures of their person - not the more generalized protections of substantive due process afforded by the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  "All claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Id.* at 395.  Therefore, this court will address the Plaintiff's excessive force claim applying a Fourth Amendment analysis.

"To assert a Fourth Amendment claim based on the use of excessive force, the plaintiffs must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable."  *Troupe v. Sarasota County, Fla.*,  419 F.3d 1160, 1166 (11th Cir. 2005).  In the present case, it is clear that a seizure occurred.  "A seizure occurs when an officer restrains the freedom of a person to walk away."  *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).  In the present case, the Defendant impaired the Plaintiff's freedom to walk away by administering blows with an ASP baton.  This court finds that such action constitutes a seizure of the person.  Thus, the pertinent question becomes whether the force used to effectuate the seizure - namely, the blows from the ASP baton - was reasonable.

In determining "reasonableness" under the Fourth Amendment, the Supreme Court has noted that the test of reasonableness "is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Instead, "its proper application requires careful attention to the facts and circumstances of each particular case. . . ." *Graham*, 490 U.S. at 396. The Court further elaborated that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The Eleventh Circuit further has stated that "[a]n officer will be entitled to qualified immunity if his actions were 'objectively reasonable'-that is, if a reasonable officer in the same situation would have believed that the force used was not excessive." *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998). It also must be noted that the Eleventh Circuit applies a stringent standard regarding qualified immunity in excessive force cases. In fact, the Eleventh Circuit has held that "when applied in excessive force cases, 'qualified immunity applies unless application of the standard would inevitably lead every reasonable officer . . . to conclude the force was unlawful.'" *Nolin v. Isbell*, 207 F.3d 1253, 1255 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994)).

The aforementioned statements play an important role in determining the reasonableness of an officer's actions by establishing an overall tenor for qualified immunity evaluations in the realm of excessive force claims. To aid lower courts in actually making a determination

11

regarding whether the use of force was reasonable for purposes of a qualified immunity defense,

however, the Eleventh Circuit, guided by Supreme Court precedent, employs a standard three-

part test.   "'[I]n determining if force was reasonable, courts must examine (1) the need for the

application of force, (2) the relationship between the need and amount of force used, and (3) the

extent of the injury inflicted.'"   *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004)

(quoting *Lee*, 284 F.3d at 1198); *see also Vinyard*, 311 F.3d at 1347.   Therefore, the court will

apply this test to the Plaintiff's version of the facts to determine whether the Defendant's use of

force was reasonable for purposes of a qualified immunity defense.

The Eleventh Circuit explains that the need for force is measured by the severity of the

crime, the potential danger to the officer, and the risk of flight.   *Lee*, 284 F.3d 1198.   Under the

present circumstances, the use of force was unnecessary.   After the initial altercation between

Q.J. and R.L. had been broken up, the Defendant approached the Plaintiff from behind, threw

him to the ground and hit him several times with a baton.[2]   Deposition of R.A., Jr., Exh. 7, pp.

97-105.   The Plaintiff was not involved in the initial altercation, other than trying to pull his

brother, R.L., away from the fight.   *Id.* at pp. 92-94.   Furthermore, the Plaintiff had crossed the

street from where the initial altercation had occurred at the point where the Defendant grabbed

him.   *Id.*   According to these facts, the Plaintiff committed no crime whatsoever.   Even assuming

---

[2] In determining reasonableness for the purposes of this Motion for Summary Judgment, the pertinent standard requires the court to assess the alleged facts in a light most favorable to the Plaintiff.   Taken in such a light, the stated facts clearly are established. It is important to note again, however, that the alleged facts submitted by the parties are extraordinarily contradictory. If the facts submitted by the Defendant were viewed in a favorable light, the stated facts upon which the reasonableness determination is made would be remarkably different.   For purposes of the current Motion, the court is bound to the facts stated above.   At trial, however, as the actual facts are determined, the court potentially will revisit this reasonableness analysis under a Motion for Judgment as a Matter of Law, if asked to do so.

the potential argument that the Plaintiff's involvement in the underlying altercation constituted a breach of the peace or disorderly conduct,[3] such a crime lacks the severity commensurate to the amount of force employed.  Moreover, because the Plaintiff was turned away from the Defendant at the time he was hit with the baton, there is no argument that either the Defendant or any other person was in imminent danger from the Plaintiff.  While the Defendant had been informed that someone in the surrounding area potentially had a gun, there was nothing to compel a reasonable officer to believe that the Plaintiff was armed and ready to use a weapon, especially considering the fact that he was moving away from the altercation and had his back turned on the Defendant.

In addition to the foregoing rationale, there is Eleventh Circuit precedent which stands for the proposition that, where there is an "absence of any justification for [the officer's] use of force, application of the Fourth Amendment reasonableness standard 'would inevitably lead every reasonable officer . . . to conclude that the force was unlawful.'"  *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998); *see also Thornton*, 132 F.3d at 1400.  At one time, this precedent appeared to present a hard and fast rule that the use of any force without probable cause for arrest would support an excessive force claim.  In recent opinions, however, the Eleventh Circuit has retreated from that bright line determination.  *See Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1333 (11th Cir. 2006) ("*Thornton* does not stand for the proposition that an independent excessive force claim may be predicated solely on the lack of power to make the arrest."); *Jackson v. Sauls*, 206 F.3d 1156, 1170-71 (11th Cir. 2000) (questioning whether the

---

[3] Although not occurring on the night in question, Plaintiff eventually was charged with disorderly conducted.  Ultimately, he was acquitted of those charges.

*Thornton* result was based merely on the use of any force or, instead, the fact that the force used was excessive).

Despite the Circuit's abandonment of the former rule, the *Thornton* decision nonetheless is instructive on the application of the reasonableness standard. As the *Bashir* court indicated, it appears that the decision in *Thornton* "was predicated on the unreasonableness of the quantum of force used under the circumstances." *Bashir*, 445 F.3d at 1333. In *Thornton*, the court found that "neither [of the plaintiffs] was suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest." *Thornton*, 132 F.3d at 1400. The court, therefore, held that the use of force, wrestling one plaintiff to the ground and throwing the other plaintiff onto the hood of a patrol car, was excessive. *Id.* The court accordingly affirmed the trial court's denial of summary judgment on qualified immunity grounds. *Id.* In the present case, there was no basis for suspecting the Plaintiff of committing any serious crime, he posed no immediate threat to the Defendant or others, and he was not resisting arrest actively. In fact, as noted above, he had moved away from the scene of the initial altercation, of which he was involved only nominally, and was attempting to leave the scene. At that point, the Plaintiff, a 12-year-old at the time, was hit from behind by the Defendant several times with an ASP baton. Whereas the Eleventh Circuit has held that, in the absence of a need for force, wrestling an adult to the ground and throwing an adult against the hood of a car both constitute excessive uses of force, this court is comfortable finding that the use of an ASP baton on a minor in a comparable situation also is excessive, there being no need for any use of force.

Because the use of force was unnecessary, the second prong in the three-part analysis, the relationship between the need for force and the amount used, is quite simple. Where no force is

necessary, a significant use of force obviously is disproportionate.  Simply, hitting a 12-year-old child from behind with a baton crosses any demarcation line of proportionality, even when applying the stringent standard set forth by the Eleventh Circuit in qualified immunity cases.

Finally, the three-part test instructs the court to look at the extent of the injuries.  Here, the Plaintiff suffered various bruises and a burst blood vessel in his leg, which required several doctor/hospital visits, the use of crutches for a period of two weeks and the use of pain medication.  Deposition of R.A., Jr., Exh. 7, pp. 20-25 and 63-67.  In addition, because of the Plaintiff's young age, this episode has caused him to suffer certain symptoms of anxiety, including shaking and tremors in the presence of police officers.  *Id.* at 190-92.  Therefore, the court must consider these significant injuries in the overall scheme of determining the reasonableness of the Defendant's actions.

Assessing the facts in a light most favorable to the Plaintiff, the Defendant's alleged actions cannot withstand scrutiny under the reasonableness standard, primarily because the quantum of force used was unnecessary.  The Plaintiff was not committing any serious crime, did not pose any threat to the Defendant or others, and was not resisting arrest.  Simply, the Plaintiff was attempting to leave the scene of a previous altercation when the Defendant hit him from behind several times with a baton.  In assessing the circumstances for purposes of a qualified immunity defense, such an application of force is unreasonable.

The Defendant attempts to analogize the present case to *Garrett v. Athens-Clark County, Ga.*, 378 F.3d 1274 (11th Cir. 2004), a case in which the Eleventh Circuit held that officers did not violate the Fourth Amendment rights of a decedent to be free from excessive force when the officers subdued the decedent with chemical spray and fettered him by tying his writs to his

ankles.  That analogy fails, however, because the facts of the present case markedly are different from the facts of the *Garrett* case.  In *Garrett*, the circumstances surrounding the decedent's proper arrest prompted the officers' use of force.  The decedent led the officers on a high speed chase, at speeds ranging over 75 mph, for over 30 miles and through three separate counties.  *Id.* at 1276.  The chase only ended after the officers used dangerous bumping techniques to disable the decedent's vehicle.  *Id.*  Further exacerbating the situation, the decedent resisted arrest upon being pulled from his vehicle by screaming, grabbing for an officer's gun and attempting to overpower the officer.  *Id.* at 1276-77.  As a result of these actions, the officers used the chemical spray and fettering techniques to subdue the decedent, which may have contributed to his ultimate demise.  *Id.* at 1277.  In assessing whether the officers could rely on qualified immunity from a suit claiming excessive force, the Eleventh Circuit ultimately held that "[a]fter considering all of plaintiff's arguments, we conclude that, as a matter of law, [the officers] did not violate [the decedent's] Fourth Amendment right to be free from excessive force."  *Id.* at 1281.

In contrast to the circumstances in *Garrett*, under the Plaintiff's version of the facts in this case, the Defendant did not face any similar threat from the Plaintiff that would justify his use of force.  As noted above, the Plaintiff, a 12-year-old, was not involved in the original altercation.  Furthermore, the Plaintiff had crossed the street from where the altercation had occurred, and the Defendant grabbed the Plaintiff from behind and hit him with an ASP baton.[4]  Assessing these circumstances, the distinctions between the present case and *Garrett* are

---

[4] Once again, it must be noted that the submitted evidence, when viewed in a light most favorable to the Plaintiff, establishes these facts, despite the conflicting account submitted by the Defendant.

obvious.  Primarily, there was no need in the present case for the Defendant to use the quantum of force employed, whereas the circumstances in *Garrett* necessitated the officers' use of force. As noted above, in *Garrett*, a serious crime was committed (leading officers on a three-county high-speed car chase), the officers faced imminent danger as the suspect attempted to overpower the officers, and the suspect actively and violently resisted arrest.  In contrast, the Defendant in the present case faced only a 12-year-old child with his back turned who was attempting to leave the scene of a previous altercation.  Clearly, the circumstances in the two cases prompt separate and distinct evaluations.  Therefore, because of the major differences between the circumstances of the two cases, the Defendant's reliance on *Garrett* as precedent is misguided.

In sum, the Defendant's unreasonable use of force amounts to a violation of the Fourth Amendment right of the Plaintiff to be free from an excessive use of force, but not of the Fourteenth Amendment's guarantee of due process.  Accordingly, if such right was clearly established at the time of the violation, qualified immunity for the Defendant on the Fourth Amendment claim is inappropriate.

### c. *Clearly Established Law*

Having determined that the Plaintiff successfully has alleged a violation of his constitutional rights, the court now turns to the question of whether the right to be free from the use of excessive force was clearly established at the time of the alleged violation.

In *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002), the Supreme Court clarified the standard for whether a violation of rights is clearly established, determining that "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 739 (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)).  The Court further stated that "'[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Id.*

The Eleventh Circuit provides further guidance in regard to determining whether a right is clearly established by setting forth three circumstances under which a court can make such a determination.  These three circumstances are: (1) when the words of the federal statute or constitutional provision are specific enough to establish particular conduct as violating a specific right, even in the total absence of case law; (2) when conduct is not so egregious as to violate a federal statute or constitutional provision on its face, but the violation nonetheless is evident through general principles set forth in case law; or (3) when the conduct does not clearly violate a right based on either the plain language of the statute/constitutional provision or the application of general principles set forth in case law, but the conduct closely resembles precedent tied closely to particular factual circumstances.  *See Vinyard*, 311 F.3d at 1350-52.

In the Eleventh Circuit, "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment."  *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006); *see also Lee*, 284 F.3d at 1197 ("The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."); *Magee v. City of Daphne*, No. 05-0633-WS-M,  2006 WL 3791971, at *8 (S.D. Ala. Dec. 20, 2006) ("The Fourth Amendment's right to freedom from unreasonable searches and seizures plainly encompasses a right to be free from excessive force during an arrest.)  This general principle is set forth in case law with such

"obvious clarity" that, applying an objective standard, all law enforcement officers should know that the use of excessive force results in a violation of constitutional rights.  No specific fact scenario is required to further elaborate this general principle.

Eleventh Circuit case law also clearly establishes the general principle that, if an officer uses force, the officer must only employ force proportionate to the need for such force.  As noted above, both the *Draper* and *Lee* decisions set forth this proposition, in addition to the Supreme Court precedent set forth in *Graham v. Connor*.  Moreover, based on other recent Eleventh Circuit decisions, the court finds that any reasonable officer would understand that, in the absence of a need for any force at all, the use of significant force, including hitting a person several times with an ASP baton, is excessive.  Although there is no case law directly comparable to the circumstances of the present case, other decisions set forth this basic premise by analogy.  *See Thornton,* 132 F.3d at 1400 (recognizing that, in the absence of a need to use force, wrestling an adult plaintiff to the ground or throwing an adult plaintiff upon the hood of a patrol car constituted an excessive use of force).

Therefore, following the Eleventh Circuit's guidance that broad statements of principle not tied to particular sets of facts can establish general law in regard to different sets of facts, it is clearly established law that use of significant force, in the absence of a need for force, is excessive and that the use of excessive force results in a Fourth Amendment violation.

**d. *Qualified Immunity Summary***

Viewing the facts in a light most favorable to the Plaintiff, the court finds that the actions of the Defendant are objectively unreasonable for purposes of the qualified immunity defense raised by the Defendant.  Furthermore, the court finds that, for purposes of qualified immunity,

pertinent case law has clearly established that, where no need for force exists, use of significant force is excessive.  Accordingly, the Defendant cannot rely on qualified immunity at this time.  If the jury believes the Plaintiff's version of the facts, the Defendant will not be protected by qualified immunity.

Based on the foregoing analysis, the Defendant's Motion for Summary Judgment in regard to the Plaintiff's Section 1983 claims against him in his individual capacity is due to be DENIED, insofar as the Plaintiff's claim is based on the Fourth Amendment, but GRANTED to the extent that it asserts any claim for violation of the Fourteenth Amendment.

### 2. *Counts Two, Three and Four - State Law Actions*

With regard to the Plaintiffs' state law tort claims against the Defendant in his individual capacity, the Defendant again relies on the immunity from suit provided by Section 14 of Article I of the Alabama Constitution.   The Alabama Supreme Court has stated that "[t]he wall of immunity erected by §14 is nearly impregnable."  *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002); *see also Hutchinson v. Bd. of Trs. of Univ. of Ala.*, 256 So. 2d 281, 284 (Ala. 1971) ("The wall of 'government immunity' is almost invincible, made so by people through their Constitution as interpreted by this Court.").  Moreover, Section 14 bars "claims against a state official or employee sued in his individual capacity."  *Ex parte Davis*, 930 So. 2d 497, 500 (Ala. 2005); *see also Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978) ("The prohibition of Section 14 cannot be circumvented by suing the official or agent individually.").[5]

---

[5] As previously noted, exceptions pointed to by the Plaintiff do not fit the claims made in this case.

Despite these strong statements regarding the immunity afforded by Section 14, the Alabama Supreme Court also has stated that "Section 14 does not necessarily immunize State officers and agents from individual liability." *Ex parte Davis*, 930 So. 2d at 500 (quoting *Gill v. Sewell*, 356 So. 2d 1196, 1198 (Ala. 1978)).  Essentially, the determination that a state official is immune from suit in his individual capacity "depends on the degree to which the action involves a state interest." *Ex parte Davis*, 930 So. 2d at 500.  The Alabama Supreme Court further has indicated that the primary distinguishing factor triggering Section 14 immunity for a state official is that the state official's position exists by virtue of constitutional decree, as opposed to legislative pronouncement. *Id.*  Simply, if the state official is a constitutional officer acting in the scope of his employment, then that official is immune from suit under Section 14. *Id.* at 500-01 ("[T]his Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.").

In the present case, the Defendant was a deputy sheriff with the Macon County Sheriff's Department.  Under the Alabama Constitution, sheriffs are executive officers of the state. ALA. CONST. art. V, §112 ("The executive department shall consist of a governor, lieutenant governor . . . and a sheriff for each county."); see also *Hereford*, 586 So. 2d at 210 (finding that sheriffs are executive officers of the state based on constitutional provision and, accordingly, are immune from suit).  Furthermore, as previously noted, Alabama law considers a deputy sheriff as a legal extension of the sheriff. *See Welch*, 57 F.3d at 1008.  Therefore, the court must consider the Defendant as a constitutional official.

21

Accordingly, because constitutional officials are afforded immunity under Section 14, even from suits against them in their individual capacity when acting within the course and scope of their employment, the Defendant is a constitutional official, and the Plaintiff alleges in the Complaint and in brief that the Defendant was acting within the scope of his authority as a deputy sheriff, these claims against the Defendant cannot succeed.  Therefore, with regard to Counts Two, Three and Four against the Defendant in his individual capacity, the Defendant's Motion for Summary Judgment is due to be GRANTED.

### C. *Motions to Strike*

In determining the Motion for Summary Judgment, the court found that the documents to which the parties objected were unnecessary in the ultimate determination of the Motion.  The court has decided the Motion for Summary Judgment without regard to that evidence.  The court thus finds it unnecessary to grant either of the Motions to Strike.  Therefore, both Motions to Strike are due to be DENIED, as moot.

### V. <u>CONCLUSION</u>

Based on the foregoing reasons,  it is hereby ORDERED as follows:

1.  With regard to Counts One, Two, Three and Four against Defendant Deputy Sheriff Walter Lacey, in his official capacity, the Defendant's Motion for Summary Judgment (Doc. #17) is GRANTED.

2.  With regard to Count One against Defendant Deputy Sheriff Walter Lacey, in his individual capacity, the Defendants' Motion for Summary Judgment (Doc. #17) is DENIED as

to the Plaintiff's claim based on the Fourth Amendment to the Constitution of the United States, and GRANTED as to any claim based on the Fourteenth Amendment.

3.  With regard to Counts Two, Three and Four against Defendant Deputy Sheriff Walter Lacey, in his individual capacity, the Defendant's Motion for Summary Judgment (Doc. #17) is GRANTED.

4.  Plaintiff R.A., Jr.'s Motion to Strike (Doc. #22) is DENIED, as moot.

5.  Defendant Deputy Sheriff Lacey's Motion to Strike (Doc. #28) is DENIED, as moot.

4. This case will proceed against Defendant Deputy Sheriff Walter Lacey only on the claim in Count One against him in his individual capacity based on his right under the Fourth Amendment to the Constitution of the United States to be free from the use of excessive force in the course of a seizure.

Done this 27th day of March, 2007.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE